SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State of New Jersey v. Edwin Urbina** (A-49-13) (073209)

**Argued November 12, 2014 – Decided June 16, 2015**

**FERNANDEZ-VINA, J., writing for a majority of the Court.**

In this appeal, the Court considers whether, in pleading guilty to the crime of aggravated manslaughter, defendant's assertion of facts implying that he acted in self-defense rendered the factual basis for his plea inadequate.

On the morning of November 24, 2007, Camden police officers arrived at the scene of a shooting where they found the body of Edwin A. Torres on the sidewalk. Torres had suffered multiple gunshot wounds to the head and neck. An eyewitness identified defendant, who was a juvenile, as the shooter. Three days later, defendant surrendered, and, subsequently, he voluntarily elected to have his case transferred from the Family Part to the Law Division. In order to avoid an indictment for first-degree murder, defendant entered into a negotiated plea agreement. He agreed to proceed as an adult and plead guilty to one count of aggravated manslaughter in exchange for the State's recommendation of a sentence not to exceed seventeen-and-one-half years' incarceration, subject to an eighty-five percent parole disqualifier and five years of post-release parole supervision.

At the plea hearing, defendant confirmed that he had sufficient time to speak with his family and counsel. In establishing a factual basis, he stated that he was walking away from Torres when he turned and saw Torres and his cousin "pulling out their firearms." Defendant then reached for his, which he claimed "just went off." Defendant asserted: "I ain't meant to kill him, your Honor. I just wanted to have him back up." Defense counsel then explained that they had initially contemplated a self-defense affirmative defense. However, counsel noted that no handgun was found on Torres, meaning that asserting a self-defense argument would require counsel to contend that someone disposed of it. In light of the six bullet wounds in Torres and the absence of a weapon at the scene, defense counsel determined that a self-defense argument was not viable. Defendant confirmed that he understood and agreed with his counsel's assessment. The prosecutor asked that the plea paperwork be amended to show a waiver of self-defense. Defendant agreed and confirmed that, by pleading guilty, he was waiving any self-defense argument. Subsequently, he was sentenced in accordance with his plea.

Nearly three years after his sentencing, defendant appealed, arguing that the trial court erred in accepting his guilty plea because the factual basis elicited for the plea indicated that he was asserting a complete defense to the charge. In a split decision, the Appellate Division affirmed defendant's conviction and sentence. The majority held that, although defendant testified to facts that raised the possibility of self-defense, when considered in light of the surrounding circumstances, his testimony did not constitute a contemporaneous claim of innocence requiring vacation of the plea. Rather, finding that defendant's testimony "was merely suggestive of the possibility of invoking self-defense," the majority determined that the trial court sufficiently explored whether defendant was raising a potential self-defense claim or was waiving it. It concluded that defendant intelligently, knowingly, and voluntarily waived self-defense.

The dissent disagreed, noting that self-defense is a complete defense, equivalent to an assertion of innocence. It further noted that when evidence is presented raising a claim of self-defense, the State bears the burden of disproving the claim beyond a reasonable doubt, which the dissent believed did not occur here. Moreover, the dissent believed that the trial court did not sufficiently explain to defendant the nature of the defense and the significance of his waiver. Thus, the dissent concluded that defendant's conviction should be reversed. Defendant appealed to this Court as of right based on the dissent in the Appellate Division. R. 2:2-1(a)(2).

**HELD:** The trial court's failure to make further inquiry into defendant's apparent assertion of self-defense, including ensuring that defendant truly understood the law of self-defense and that the State bears the burden of disproving self-defense once asserted, renders it unclear whether defendant's plea was truly knowing, intelligent, and voluntary and requires vacation of his plea of guilty to aggravated manslaughter.

1.  Self-defense is an affirmative defense to a charge of aggravated manslaughter. Pursuant to N.J.S.A. 2C:3-4(a), the use of deadly force against another is justifiable as self-defense "when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." A defendant claiming self-defense must have an actual, honest, and reasonable belief in the necessity of using force. In New Jersey, a guilty plea does not operate as a waiver of all affirmative defenses, including self-defense. This is consistent with the requirement that the trial court elicit a comprehensive factual basis prior to accepting a plea, which allows the court to ascertain the plea's voluntariness while simultaneously protecting a defendant from pleading guilty to a crime he or she did not commit. (pp. 18-23)

2.  Challenges to the sufficiency of the factual basis for a plea are generally brought either by way of a motion to withdraw the plea or on post-conviction relief, but may also be brought on direct appeal. A reviewing court owes no deference to the trial court when assessing whether the factual admissions during a plea colloquy satisfy the elements of an offense. Review of the law is plenary. (pp. 23-24)

3.  The Court notes that if a suggestion of self-defense is raised in a plea colloquy, then the trial court must inquire whether the defendant is factually asserting that defense. If he is not, the plea can be accepted. If, on the other hand, he claims that he used deadly force against the victim in the reasonable belief that his life was in danger, then he is asserting that he did not commit the crime. Before allowing a defendant to waive a claim of self-defense, the trial court must conduct a thorough and searching inquiry into the defendant's understanding of the nature of the right being waived and the consequences of that choice. The court must, on the record, ensure that the waiver is knowing and voluntary, requiring both the court and defense counsel to ensure that the defendant has an understanding of self-defense in relation to the facts of the case and that he or she knows that the State bears the burden of disproving the defense if asserted. (pp. 24-26)

4.  Here, the trial court's colloquy on aggravated manslaughter would have been appropriate if not for its failure to make further inquiry into defendant's apparent assertion of self-defense. The Court also is not satisfied that defendant's waiver of self-defense comported with the requisite standard. Specifically, the trial court did not ensure that defendant truly understood the law of self-defense, including the requirement of a reasonable and honest belief in the necessity of using force, or that he understood that the State bore the burden of disproving self-defense once asserted. Absent such an inquiry, it is unclear whether defendant's guilty plea was truly knowing, intelligent, and voluntary, thereby rendering the factual basis insufficient and requiring vacation of the plea. (pp. 26-27)

The judgment of the Appellate Division is **REVERSED**, defendant's guilty plea is **VACATED**, and this matter is **REMANDED** for further proceedings.

**JUSTICE SOLOMON, DISSENTING,** joined by **JUSTICES LaVECCHIA and PATTERSON,** expresses the view that defendant knowingly, intelligently, and E voluntarily waived his right to raise a self-defense claim, explaining that defendant's fleeting suggestion that he acted in self-defense was a product of his natural reluctance to admit to criminally culpable conduct and that any uncertainty about his admission of guilt was sufficiently resolved by the trial court's questioning and defendant's own admissions.

**CHIEF JUSTICE RABNER, JUSTICE ALBIN and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion. JUSTICE SOLOMON filed a separate dissenting opinion, in which JUSTICES LaVECCHIA and PATTERSON join.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

EDWIN URBINA,

    Defendant-Appellant.

> Argued November 12, 2014 – Decided June 16, 2015
>
> On appeal from the Superior Court, Appellate Division.
>
> Robin Kay Lord argued the cause for appellant (Law Office of Robin Kay Lord, attorney; Ms. Lord and Richard W. Berg, of counsel and on the brief).
>
> Jennifer E. Kmieciak, Deputy Attorney General, argued the cause for respondent (John J. Hoffman, Acting Attorney General of New Jersey, attorney).

    JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

    This case involves an appeal from defendant Edwin Urbina's conviction and sentence for first-degree aggravated manslaughter, contrary to N.J.S.A. 2C:11-4(a)(1), following his entry of a guilty plea for the shooting death of Edwin A. Torres. Defendant asserts that the trial court erred in accepting his guilty plea because the "factual basis elicited for [that] guilty plea indicated that [defendant] was asserting

a complete defense to the charge." That factual basis was later challenged on appeal, along with defendant's seventeen-and-one-half year sentence.

In a split decision, a majority of the Appellate Division panel affirmed defendant's conviction and sentence. The majority held that while defendant testified to facts during the plea colloquy that raised the possibility of self-defense, his testimony, when considered in light of all the surrounding circumstances, did not constitute a contemporaneous claim of innocence requiring the court to vacate the plea. Rather, the majority found that defendant, during his plea colloquy, explicitly agreed to waive self-defense after consultation with counsel and his family. The majority additionally noted that defendant signed an amended plea form waiving such defense. One member of the appellate panel dissented, concluding that defendant's plea was accompanied by a claim of innocence, and further found that the trial judge failed to engage in a sufficient colloquy with defendant to confirm that his self-defense waiver was knowing and voluntary.

Defendant appealed as of right to this Court. See R. 2:2-1(a)(2). We are now asked to consider whether, in pleading guilty to the crime of aggravated manslaughter, defendant's assertion of facts implying that he acted in self-defense rendered the factual basis for that plea inadequate. For the

2

reasons set forth in this opinion, we reverse the judgment of the Appellate Division.

I.

On the morning of November 24, 2007, emergency dispatchers received a report of an injured man in Camden City. Upon arrival at the specified location, Camden police officers found the victim, Edwin A. Torres, deceased on the sidewalk with multiple gunshot wounds to the head and neck. An eyewitness to the incident identified defendant, Edwin Urbina, as the shooter. The witness had known defendant since childhood. Defendant, sixteen years old at the time of the shooting, was thereafter charged with an offense that, if committed by an adult, would constitute murder contrary to N.J.S.A. 2C:11-3(a)(1), (2).

Three days later, on November 27, 2007, defendant, accompanied by counsel, surrendered at the Camden Police Department, and was thereafter remanded to a youth correctional facility.

On March 27, 2008, defendant voluntarily elected to have his case transferred from the Family Part to the Law Division, pursuant to N.J.S.A. 2A:4A-27.

On that same date, in order to avoid an indictment for first-degree murder carrying a potential life sentence with a mandatory parole disqualifier of thirty years, defendant entered into a negotiated plea agreement with the State. Under the

3

terms of that plea arrangement, defendant agreed to proceed as an adult and to plead guilty to one count of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), in exchange for the State's recommendation of a sentence not to exceed seventeen-and-one-half years' incarceration subject to an eighty-five percent parole disqualifier and five years of post-release parole supervision under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. As a further part of the agreement, defendant agreed to pay the requisite fines and penalties and to waive his right to appeal. Defense counsel expressly reserved the right to argue for a sentence less than the sentence the State agreed to recommend in accordance with State v. Warren, 115 N.J. 433 (1989).

At the plea hearing, defendant testified under oath that he had sufficient time to speak with his family and counsel before deciding to plead guilty. Thereafter, counsel for defendant represented to the court that he explained to defendant that "by waiving the Grand Jury he would not be indicted for murder" and that defendant would instead proceed "on a less serious charge." Defendant acknowledged his understanding and voluntary agreement to waive indictment. To establish the factual basis for defendant's plea, the following colloquy took place, which we set out at length because of its importance:

4

[DEFENSE COUNSEL]: Edwin, on November 24th you were in the City of Camden, correct?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: You came into contact at that time with Edwin Torres. Do you recall that?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: And, Edwin, actually there was another young man with him, is that correct?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: And at the time, you and Edwin Torres, would it be fair to say, got into an argument?

THE DEFENDANT: Yes.

[DEFENSE COUNEL]: At some point during that argument did you produce a handgun and fire that at Edwin? Did you shoot the handgun?

THE DEFENDANT: First he smacked me. When I was walking off, I looked behind me. He said I know you and I turn your back behind me. I looked behind me. Him and his cousin was pulling out their firearms. I went for mines. It was an automatic, so then the gun just went off. When it went off it dropped. When it dropped I picked it up and I just ran.

I ain't mean to kill him, your Honor. I just wanted to have him back up.

THE COURT: You discharged a firearm in his direction, right?

THE DEFENDANT: I shot, like, away from, but it hit and the gun took my hand.

THE COURT: Well, you didn't shoot it in the air and it went in the air and accidentally

5

came down and hit him in the top of the head, right?

THE DEFENDANT:  No.

THE COURT:  You pointed it in his direction, right?

THE DEFENDANT:  Yes.

THE COURT:  You discharged it multiple times, right?

THE DEFENDANT:  Yes.

THE COURT:  You pulled it six times.  It wasn't an automatic, right?

THE DEFENDANT:  Yes -- no, it was an automatic.

THE COURT:  You pulled the trigger once and six bullets came out?

THE DEFENDANT:  Yes.

THE COURT:  That's right?

THE DEFENDANT:  Yes.

THE COURT:  You knew the pistol was an automatic?

THE DEFENDANT:  No.

THE COURT:  But you still shot in his direction six times, correct?

THE DEFENDANT:  Yes.

THE COURT:  And you struck him six times?

THE DEFENDANT:  Yes.

[DEFENSE COUNSEL]:  Your Honor, for the record, I also have discovery.  The post-mortem indicates six bullet wounds to the victim, so I would just state that also.

6

As far as -- and I don't disagree at all with Edwin's recitation of the facts. However, as far as the disposition in this matter, in preparation of this matter, there was no handgun found on the victim at the time the police responded. We would have had to argue that someone disposed of it in order to proffer a viable self-defense argument and I took all that into account when we decided on that and, therefore, although it certainly was contemplated a possible self-defense, based on the lack of a weapon found at the scene and the six bullet wounds, it's my professional opinion that that would not have been a particularly viable defense.

THE COURT: You understand what your lawyer just said?

THE DEFENDANT: Yes.

THE COURT: And you agree with that assessment?

THE DEFENDANT: Yes.

[PROSECUTOR]: If I may, Judge, there is an eyewitness and the eyewitness account does not include the victim having a handgun.

The facts as the State understood them are different from the defense version.

We ask that the plea paperwork be amended to show a waiver of self-defense as part of the plea.[1]

THE COURT: You understand what [the prosecutor] said?

THE DEFENDANT: Yes.

THE COURT: You agree with that as well?

_____

[1] The plea form, initialed and signed by the defendant, included this requested waiver of self-defense as well as the waiver of defendant's right to appeal.

7

THE DEFENDANT: Yeah.

THE COURT: You reviewed everything with your lawyer and you reached this conclusion that this was the best thing to do under the circumstances, right?

THE DEFENDANT: Yes.

THE COURT: There's no doubt that you, in fact, discharged a firearm in the direction of Mr. Torres and caused his death, correct?

THE DEFENDANT: Yes.

THE COURT: All right. And you do know that, again, by pleading guilty today, you've waived any potential utilization of self-defense, correct?

THE DEFENDANT: Yes.

THE COURT: You also understand when you weighed everything out that, as [defense counsel] said and as I alluded to, had the matter gone to the Grand Jury you could have been, in fact, indicted for a first degree murder carrying a life sentence, 85 percent without parole, which is essentially 62-and-a-half years without parole?

You understand that?

THE DEFENDANT: Yes.

THE COURT: So, you weighed all that when you reached this decision with your family's assistance and [defense counsel's] assistance, correct?

THE DEFENDANT: Yes.

8

The court thereafter found that defendant provided an adequate factual basis for aggravated manslaughter, and accepted the plea.

On May 16, 2008, defendant appeared for sentencing. At the sentencing hearing, the prosecutor briefly set forth the State's version of events, as developed during the course of the investigation into the victim's murder:

> [PROSECUTOR]: There was an eyewitness to this matter of November 24, 2007, at 10:32 A.M., Third and Erie, in the City of Camden, where Edwin Torres was murdered, he was 22 years old.
>
> And we had an eyewitness to this murder. In fact, the eyewitness stated the victim and the defendant engaged in conversation, the defendant pulled a gun, the defendant shot the victim. When the victim, Edwin Torres, went to the ground, the defendant stood over top of him, the victim, and at point blank range, repeatedly fired shots into the victim while he was down.
>
> In essence, Judge, this was an execution. The victim was executed on the streets of Camden at 10:32 A.M. in broad daylight.
>
> Even more troubling is the fact that the juvenile simply walked -- turned away and calmly walked down the street as if nothing ever happened.
>
> The investigation revealed between 6 and 10 bullets were fired from one weapon, one firer [sic]. Unfortunately, the victim was hit multiple times. Shot in the leg, torso, neck and face. And he was pronounced dead soon thereafter.

9

Defense counsel then represented to the Court that he agreed with the version of events set forth by the State:

> [DEFENSE COUNSEL]: The facts which the State just voiced to the Court were contained in numerous reports which I read and, indeed, is reflective of what [defendant] voiced to your Honor when he pled guilty . . . to this charge[.]

Defendant confirmed that he did not have any additions or corrections to the presentence report and acknowledged that he was sorry for the crime and apologized to the Torres family. Thereafter, the following exchange occurred between the court and defendant:

> THE COURT: I mean, it's somewhat distressing when you did what you did as if you were killing a bug of some kind where you don't even think about it, you step on the ant and you end its life and not give it a second thought.
>
> That's what seemed to happen here . . . .
>
> THE DEFENDANT: I had a witness. Ain't happen like that. I ain't stand over him and shot him two times in the face.
>
> THE COURT: Well, let me ask you this. How many times did that weapon discharge in his direction?
>
> THE DEFENDANT: Ten times.
>
> THE COURT: How many?
>
> THE DEFENDANT: Ten.
>
> THE COURT: I mean, what do you think happens when you shoot at somebody ten times? You think they are going to live? You think there is a likelihood of survival in that situation?

10

THE DEFENDANT: No.

After finding two aggravating factors -- N.J.S.A. 2C:44-1(a)(3) (risk of re-offense) and N.J.S.A. 2C:44-1(a)(9) (need for deterrence) -- and no mitigating factors, the court, in accordance with the plea agreement, sentenced defendant to a prison term of seventeen-and-one-half years with an eighty-five percent parole ineligibility period subject to NERA, with appropriate fines and penalties.

On April 11, 2011, nearly three years after his sentencing, defendant filed a pro se petition for post-conviction relief alleging ineffective assistance of counsel. After retaining private counsel, defendant moved to withdraw his petition in favor of pursuing an untimely direct appeal. The trial court granted defendant's motion without prejudice. The Appellate Division thereafter granted defendant's motion to file a Notice of Appeal as within time.

On direct appeal, defendant argued that the trial court erred in accepting his guilty plea because the "factual basis elicited for defendant's guilty plea indicated that he was asserting a complete defense to the charge." Defendant also argued that his sentence was manifestly excessive.

In a split decision, the Appellate Division majority affirmed defendant's conviction and sentence. At the outset,

the majority noted that defendant never moved to withdraw his plea, and thus the panel was only asked to consider defendant's challenge to the factual basis for his plea.  On that issue, the majority held that while defendant testified to facts during the plea colloquy that raised the possibility of self-defense, his testimony, when considered in light of all the surrounding circumstances, did not constitute a contemporaneous claim of innocence requiring the court to vacate the plea.

Explaining its rationale for this conclusion, the majority began by noting that defendant testified as follows:  (1) he fired multiple shots from a handgun in the direction of the victim, and struck the victim six times; (2) the victim died as a consequence of the gunshot wounds; and (3) he did not intend to kill the victim, but "just wanted to have him back up." According to the majority, this testimony provided a sufficient factual basis to support a plea to aggravated manslaughter under N.J.S.A. 2C:11-4(a)(1).

Moreover, the majority determined that defendant's statement that he saw the victim and another person "pulling out their firearms," prompting defendant to pull his own weapon and fire at the victim "to have him back up," did not constitute an assertion of innocence.  To the contrary, the majority concluded that defendant's statement "was merely suggestive of the possibility of invoking self-defense."  Noting that such a

12

statement required exploration into whether defendant was raising a potential self-defense claim or was waiving the defense, the majority found that the trial court sufficiently probed defendant about his statement and plea in accordance with State v. Munroe, 210 N.J. 429, 445 (2012) (instructing trial courts to fully explore factual basis for plea to ascertain whether defendant "has a potentially valid defense and whether he is willing to waive it and enter a guilty plea").

Considering the totality of the record before it, the majority concluded that defendant intelligently, knowingly, and voluntarily waived self-defense. Specifically, the majority noted, defendant acknowledged discussing the case with counsel and his family and having sufficient time to consider entering a plea. Moreover, the majority noted that the issue of self-defense was explored on the record before the judge, and defendant acknowledged that he agreed to waive the defense and concurred with the judgment of his counsel that the defense may not have succeeded. Finally, defendant stated that after weighing all the facts and the charges then pending against him, he wanted to waive self-defense and accept the plea offer.

In response to the dissent's argument that defendant asserted a claim of self-defense, and consequently a claim of innocence, the majority noted that defendant never stated that "the victim threatened his life or even tried to point the

13

weapon at him," nor did he assert that "he had to fire [the weapon] to prevent his own death or serious injury."  Therefore, under the circumstances presented, defendant's plea statement did not negate an essential element of his aggravated manslaughter charge, and did not, in the majority's opinion, amount to a contemporaneous claim of innocence.

The majority found defendant's sentence, imposed pursuant to the plea bargain, was not manifestly excessive or unduly punitive.

The dissent concluded that defendant's conviction should be reversed because the defendant asserted a claim of self-defense, and consequently a claim of innocence.  The dissent posited that accepting defendant's plea despite his assertion that he was defending himself runs afoul of this Court's disapproval of Alford pleas, wherein a defendant pleads guilty but simultaneously maintains his or her innocence.  See North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

The dissenting judge first noted that self-defense is a complete defense -- equivalent to an assertion of innocence. The dissent added that when evidence is presented raising a claim of self-defense, the State bears the burden of disproving that claim beyond a reasonable doubt.  The dissent stated that waiver of self-defense should not be permitted because it

14

constitutes waiver of an essential, but missing element of the offense at issue, and thus results in a guilty plea despite a claim of innocence.

The dissenting judge further stated that when a court accepts a guilty plea on a waiver of self-defense, then under Alford, supra, "we should demand a 'strong factual basis'" for rejecting the self-defense claim and accepting the plea.  The dissent stated that "the State's showing [here] fell short" because it failed to offer any cognizable evidence, let alone a "strong factual basis," disproving defendant's claim of self-defense.  Moreover, whether defendant's waiver was knowing and voluntary was a "significant question," because "[t]here was an insufficient effort [by the court] to explain to defendant on the record the nature of the defense and the significance of his waiver."  In light of these perceived errors and deficiencies, the dissent concluded that it was necessary to reverse defendant's conviction.

Defendant appeals to this Court as of right based on the dissent in the Appellate Division.  See R. 2:2-1(a)(2).

## II.

Defendant maintains that the trial court erred in accepting his guilty plea because the factual basis elicited for that plea indicated that he was asserting a complete defense to the charge of aggravated manslaughter.  Defendant argues that accepting a

15

guilty plea despite a claim of self-defense runs afoul of this Court's disapproval of <u>Alford</u> pleas.  Therefore, according to defendant, a plea generally should not be accepted unless there is a retraction or disavowal of a "complete defense, like self-defense, which is an assertion of innocence."

Defendant additionally argues that the trial court failed to sufficiently engage defendant both to determine whether there existed an adequate factual basis for his guilty plea and to confirm that he understood the law of self-defense well enough to make a truly voluntary and knowing decision to waive that defense.  Defendant notes that he was only sixteen years old, with a limited education, and no experience with the adult criminal justice system when he entered his guilty plea. Defendant asserts that the trial court did not give him appropriate advice regarding his rights.

In contrast, the State contends that defendant's guilty plea was supported by an adequate factual basis.  Noting that a challenge to the sufficiency of the factual basis for a plea is generally premised upon a failure of a defendant to admit to all of the elements of a crime, the State argues that it is beyond dispute that defendant's own admissions established all of the elements of aggravated manslaughter.  According to the State, defendant's testimony that the victim pulled out a gun first did not negate his guilty plea, and did not constitute a

16

contemporaneous claim of innocence requiring that his plea be vacated. Rather, the State maintains that these statements were nothing more than an unsupported, self-serving attempt by defendant to downplay his criminal culpability.

The State also insists that when confronted with defendant's testimony regarding this alleged act of the victim, the trial court appropriately explored the issue to ensure that defendant's plea was knowing and voluntary, and that it was based on facts sufficient to support the charge of aggravated manslaughter. Addressing the claim that the trial court failed to adequately explain to defendant on the record the nature of self-defense and the significance of his waiver, the State argues that requiring a more detailed colloquy would place an improper burden on the trial judge to become a second defense attorney in advising a defendant with respect to his decision to enter a guilty plea. Specifically, the State argues that the dissent "would require the trial judge to explore the merits of a potential self-defense claim on the record with a defendant."

Moreover, to the extent defendant now claims he is actually innocent because he has a valid defense, the State argues that defendant should have moved below to withdraw his guilty plea on that basis, noting that all of the Slater[2] factors weigh heavily

_____

[2] State v. Slater, 198 N.J. 145, 157-58 (2009) (prescribing four factors that should be weighed in evaluating motion to withdraw

17

against granting such a motion at this late stage. For support, the State cites to and distinguishes this Court's recent application of the Slater factors in Munroe, supra, arguing that unlike in Munroe, defendant here specifically acknowledged that he was not asserting a self-defense claim and that the State's proofs contradicted his claim.

The State concludes by asserting that under the paradigm created by the dissent, any defendant who admits guilt at a plea hearing while throwing some blame at his victim can successfully repudiate his plea at any time -- a result that would undermine the judicial system's compelling interest in finality and the plea bargaining system as a whole.

III.

A.

The essential elements of aggravated manslaughter are found in N.J.S.A. 2C:11-4(a)(1). Under this statute, "[c]riminal homicide constitutes aggravated manslaughter when . . . [t]he actor recklessly causes death under circumstances manifesting extreme indifference to human life." A defendant acts "recklessly" when he

---

guilty plea: "1) whether the defendant has asserted a colorable claim of innocence; 2) the nature and strength of defendant's reasons for withdrawal; 3) the existence of a plea bargain; and 4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused").

18

consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

[N.J.S.A. 2C:2-2(b)(3).]

B.

Self-defense, one of several forms of justification recognized by our Code of Criminal Justice, is an affirmative defense to a charge of aggravated manslaughter. N.J.S.A. 2C:3-1(a). Under the Code, the use of deadly force against another is justifiable as self-defense "when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." N.J.S.A. 2C:3-4(a).

While it is not imperative that actual necessity exist, a defendant claiming self-defense must have an actual belief in the necessity of using force, and must also establish that the belief was honest and reasonable. See State v. Perry, 124 N.J. 128, 161 (1991) (quoting State v. Kelly, 97 N.J. 178, 198-99 (1984)). However, for a defendant to prevail on a claim of self-defense,

19

the jury need not find beyond a reasonable doubt that the defendant's belief was honest and reasonable. Rather, if any evidence raising the issue of self-defense is adduced, either in the State's or the defendant's case, then the jury must be instructed that the State is required to prove beyond a reasonable doubt that the self-defense claim does not accord with the facts; acquittal is required if there remains a reasonable doubt whether the defendant acted in self-defense.

[Kelly, supra, 97 N.J. at 200.]

At trial, therefore, "[o]nce the issue of self-defense has been raised, the burden to disprove the issue shifts to the State." Perry, supra, 124 N.J. at 194.

"Self-defense exonerates a person who kills in the reasonable belief that such action was necessary to prevent his or her death or serious injury . . . ." Kelly, supra, 97 N.J. at 198.

C.

A defendant who enters a plea of guilty "simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers." McCarthy v. United States, 394 U.S. 459, 466, 89 S. Ct. 1166, 1170-71, 22 L. Ed. 2d 418, 425 (1969). While in some jurisdictions a guilty plea operates as a waiver of all affirmative defenses, see, e.g., People v. Bonwit, 219 Cal. Rptr. 297, 299 (Ct. App. 1985) ("A guilty plea is more than an admission of guilt; it is also a

20

waiver of affirmative defenses"), our courts have been hesitant to go to such extremes.

This is in line with our Rules of Court, which instruct courts not to accept a plea of guilty

> without first questioning the defendant personally, under oath or by affirmation, and <u>determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily</u>, not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea.
>
> [<u>R.</u> 3:9-2 (emphasis added).]

Indeed, "it is essential to elicit from the defendant a comprehensive factual basis, addressing each element of a given offense in substantial detail." State v. Campfield, 213 <u>N.J.</u> 218, 236 (2013). The "court must be 'satisfied from the lips of the defendant,'" State v. Smullen, 118 <u>N.J.</u> 408, 415 (1990) (quoting State v. Barboza, 115 <u>N.J.</u> 415, 422 (1989)), that he committed every element of the crime charged, State v. Sainz, 107 <u>N.J.</u> 283, 293 (1987).

The purpose of this factual foundation is multi-faceted. First, the factual basis enables a judge to "ascertain the plea's voluntariness." McCarthy, supra, 394 <u>U.S.</u> at 466, 89 <u>S. Ct.</u> at 1170-71, 22 <u>L. Ed.</u> 2d at 425. "Because a guilty plea is an admission of all the elements of a formal criminal charge, it

21

cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." Ibid. Indeed, Rule 3:9-2 specifies that the court must determine that the "plea is made voluntarily . . . with an understanding of the nature of the charge." It is therefore the duty of the plea judge to ensure that a defendant pleading guilty "has a full understanding of what the plea connotes and of its consequence," and to thereby "leave[] a record adequate for any review that may be later sought." Boykin v. Alabama, 395 U.S. 238, 244, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274, 280 (1969).

Second, the requirement of a factual basis helps "to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." Barboza, supra, 115 N.J. at 421 (internal quotation marks omitted). In fact, in New Jersey, "[e]ven if a defendant wished to plead guilty to a crime he or she did not commit, he or she may not do so. No court may accept such a plea." Smullen, supra, 118 N.J. at 415. This is in stark contrast to the federal standard, which allows an individual accused of a crime to "voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime," so long as there is a "strong

22

factual basis for the plea," Alford, supra, 400 U.S. at 37–38, 91 S. Ct. at 167–68, 27 L. Ed. 2d at 171–72. Our rationale for departure from the federal rule is clear:

> We are mindful that our system of justice is not perfect and that, at times, an accused, without the knowledge of the court, may enter a plea of guilty to a crime he did not commit to insulate himself from a potentially greater sentence if found guilty by a jury. That is something over which we have no control. It is another thing, however, for a court to say it is acceptable for a defendant to give a perjured plea. Our court rules and case law require a factual basis for a plea of guilty, that is, a truthful account of what actually occurred to justify the acceptance of a plea. That approach in the long-run is the best means of ensuring that innocent people are not punished for crimes they did not commit. It is an approach that is essential to the very integrity of our criminal justice system.
>
> Just because we are powerless to control or eliminate every negative practice in our criminal justice system does not mean that we must condone those practices. Though we recognize that sometimes an accused, unknown to the trial judge, will perjure himself to put through a plea agreement, a court cannot give official license to such a practice.
>
> [State v. Taccetta, 200 N.J. 183, 198 (2009).]

D.

Challenges to the sufficiency of the factual basis for a guilty plea are most commonly brought by way of a motion to the trial court to withdraw that plea, see, e.g., Slater, supra, 198

23

N.J. at 157, or on post-conviction relief, see, e.g., State v. D.D.M., 140 N.J. 83, 95 (1995).

Although less common, a defendant may also challenge the sufficiency of the factual basis for his guilty plea on direct appeal.  See State v. Butler, 89 N.J. 220, 224 (1982).  "The standard of review of a trial court's denial of a motion to vacate a plea for lack of an adequate factual basis is de novo." State v. Tate, 220 N.J. 393, 404 (2015); see also Campfield, supra, 213 N.J. 230-32 (analyzing whether factual basis existed without discussing Slater factors).  We therefore owe no deference to the trial court that took this plea.  "An appellate court is in the same position as the trial court in assessing whether the factual admissions during a plea colloquy satisfy the elements of an offense."  Tate, supra, 220 N.J. at 404. Review of the law is plenary.  Ibid.

IV.

With the applicable legal principles in mind, we now examine whether, in pleading guilty to the crime of aggravated manslaughter, defendant's assertion of facts implying that he acted in self-defense rendered the factual basis for that plea inadequate.

We begin by first noting that if a suggestion of self-defense is raised in the plea colloquy, then the trial court must inquire whether the defendant is factually asserting self-

24

defense.  If the defendant states that he is not claiming self-defense, then the plea can be accepted.  On the other hand, if the defendant claims that he used deadly force against the victim in the reasonable belief that his life was in danger, then the defendant is asserting that he did not commit the crime.

So long as the defendant does not factually contend that he acted in self-defense, a defendant may waive a claim of self-defense.  As such, before allowing a defendant to waive a claim of self-defense, we require "a thorough and searching inquiry" into "his or her understanding of the nature of the right being waived and the implications that flow from that choice."  State v. Handy[3], 215 N.J. 334, 362 (2013); see also McCarthy, supra, 394 U.S. at 466, 89 S. Ct. at 1171, 22 L. Ed. 2d at 425 (noting waiver cannot be deemed knowing, intelligent, and voluntary "unless the defendant possesses an understanding of the law in relation to the facts").  To this end, it is the responsibility of the plea judge to ensure that the waiver is knowing and voluntary, and to do so on the record.  See Boykin, supra, 395 U.S. at 244, 89 S. Ct. at 1712, 23 L. Ed. 2d at 280.  Presuming waiver from a silent record is impermissible.  Accordingly, during the plea colloquy, both the plea judge and defense

---

[3]  In cases such as this, State v. Slater, 198 N.J. 145 (2009) is not applicable.

counsel should ensure that the defendant has an understanding of self-defense in relation to the facts of his case, and should inform the defendant that the State has the burden to disprove the defense if asserted.

Here, the trial court's colloquy on aggravated manslaughter would have been appropriate if not for the failure to make further inquiry into the apparent assertion of self-defense. Furthermore, we are not satisfied that defendant's waiver of self-defense comported with the standard that we require.

After defendant stated during the plea colloquy that he pulled his handgun after the victim and his cousin pulled their guns, and that "I ain't mean to kill him, your Honor. I just wanted to have him back up[,]" the trial court should have explored whether defendant was claiming he acted in self-defense. However, the plea judge did not ensure that defendant truly understood the law of self-defense, including the requirement of a reasonable and honest belief in the necessity of using force, see Perry, supra, 124 N.J. at 161, or that he understood that the State had the burden to disprove self-defense once asserted, id. at 194. Absent such an inquiry on the record, it is unclear whether defendant's plea was truly knowing, intelligent, and voluntary. See McCarthy, supra, 394 U.S. at 466, 89 S. Ct. at 1171, 22 L. Ed. 2d at 425; State v. Cecil, 260 N.J. Super. 475, 488 (1992). As such, we cannot

26

rightly conclude that a strong factual basis existed to support defendant's guilty plea.

Because we find that the factual basis was insufficient, we are constrained to vacate defendant's plea of guilty to aggravated manslaughter.

## V.

For these reasons, we reverse the judgment of the Appellate Division and vacate defendant's guilty plea to aggravated manslaughter. Defendant is returned to the position where he stood before he entered his guilty plea, and this matter is hereby remanded for further proceedings.


CHIEF JUSTICE RABNER, JUSTICE ALBIN and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion. JUSTICE SOLOMON filed a separate dissenting opinion, in which JUSTICES LaVECCHIA and PATTERSON join.

27

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

EDWIN URBINA,

    Defendant-Appellant.


    JUSTICE SOLOMON, dissenting.

    Defendant admitted under oath that he caused the death of the victim, who was standing in close proximity just before defendant fired a gun in the victim's direction, shooting him six times. The majority acknowledges that these admissions were sufficient to support defendant's conviction for aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1). However, the majority believes that defendant did not knowingly, intelligently, and voluntarily waive the affirmative defense of self-defense. Because, in my view, defendant's express waivers were adequate to relinquish his self-defense claim, I respectfully dissent.[1]

---

[1] Nearly three years after his sentencing, defendant filed a timely pro se petition for post-conviction relief (PCR). After he obtained private counsel, defendant moved to withdraw his PCR application and pursued leave to file an untimely direct appeal, which the Appellate Division granted.

1

At the plea hearing, defendant stated that he had a verbal disagreement with the victim, and that, as defendant was "walking off," he looked back and saw the victim and his cousin "pulling out their firearms." Because this statement suggested defendant was making a claim of self-defense, the plea judge directed further inquiry to determine whether defendant's plea was factually supported and whether he actually intended to assert or waive self-defense.

I agree with the majority that defendants are permitted to waive self-defense pursuant to a plea. See ante at ___ (slip op. at 25. The reasons for this are two-fold. First, as this Court recognized in State v. Perry, 124 N.J. 128, 163 (1991), a self-defense claim may severely limit trial strategy because a self-defense theory carries with it the tacit admission that the defendant was indeed at the scene of the crime. Second, our Court has already established that a defendant may waive an affirmative defense so long as that waiver is "knowing, voluntary, and intelligent." See State v. Handy, 215 N.J. 334, 362 (2013) (dealing specifically with insanity defense). These two principles, taken together, suggest that a criminal defendant should be permitted to waive self-defense where waiver offers a strategic benefit to the defendant -- including entering into a plea agreement -- provided the waiver is

knowing, voluntary, and intelligent. As stated by the majority, "[s]o long as the defendant does not factually contend that he acted in self-defense a defendant may waive a claim of self-defense." Ante at ___ (slip op. at 25).

Here, defendant did not factually contend that he acted in self-defense. Furthermore, after defendant intimated that his actions were justified, defense counsel stated that, because "there was no handgun found on the victim at the time the police responded," it was his "professional opinion that [self-defense] would not have been a particularly viable defense." Defendant agreed with his counsel's assessment.

Additionally, the prosecutor stated that an "eyewitness account" indicated that the victim was unarmed at the time of the shooting. Defendant not only agreed with that statement, but also acquiesced to the prosecutor's request to amend the plea agreement to include a waiver of self-defense, which defendant later signed.

Defendant also assented when, near the end of the plea colloquy, the judge asked if defendant "reached this decision with your family's and [defense counsel's] assistance." Moreover, the court specifically asked defendant if he understood that, "by pleading guilty today, you've waived any potential utilization of self-defense," to which defendant answered "Yes."

3

Any uncertainty about defendant's admission of guilt was resolved by the trial court's questioning and the admissions of defendant who unequivocally and emphatically adopted the statements of his counsel.  See Handy, supra, 215 N.J. at 348, 362 (finding defendant was entitled to waive affirmative defense after he informed court of that desire); see also State v. Gregory, 220 N.J. 413, 420 (2015) (holding plea courts are entitled to consider direct admissions and statements adopted by defendant).

## II.

Nevertheless, the majority, relying on Handy, supra, 215 N.J. at 362, concluded that "the plea judge did not ensure that defendant truly understood the law of self-defense, including the requirement of a reasonable and honest belief in the necessity of using force, or that the State had the burden to disprove self-defense once asserted."  Ante at ___ (slip op at 26) (citations omitted).

In Handy, this Court was confronted with the issue of whether a defendant was competent to waive an insanity defense and proceed on a claim of self-defense.  Id. at 337-39.  Defense counsel in that case disregarded the defendant's repeated attempts to assert self-defense, instead relying on "the strong possibility that [the defendant] might be found not guilty by reason of insanity."  Id. at 357.  In a bifurcated proceeding,

4

the defendant was found not guilty by reason of insanity, and thus was deprived of an opportunity to present his self-defense claim. Id. at 338. This Court, addressing the tension between the trial court's finding that defendant was not competent to waive the insanity defense and defendant's preference to assert only the substantive claim of self-defense, determined that "the solution is to apply a procedure akin to that which we utilize in evaluating a competent defendant's effort to waive other significant rights." Id. at 362.

In that context, this Court held that "a thorough and searching inquiry" should be conducted before determining whether "the decision to waive the insanity defense, particularly in the context of a unified trial proceeding, is indeed knowing, voluntary and intelligent." Ibid. By contrast, competency, which understandably requires a more thorough and searching analysis, was not at issue here. Rather, the plea court was faced only with a vague assertion of facts which ultimately demonstrated that self-defense was not a viable claim.

The second case cited by the majority is State v. Munroe, 210 N.J. 429 (2012). In that case, the defendant pled guilty, then later sought to withdraw his guilty plea by asserting that he had acted in self-defense. Id. at 434. Analyzing the defendant's claim under the framework established in State v.

5

Slater, 198 N.J. 145, 157-58 (2009), this Court determined that the defendant presented a colorable claim of innocence. Munroe, supra, 210 N.J. at 434, 445.[2] Importantly, we found "[n]othing in the [the defendant's] plea colloquy [that] contradicted [his] later assertion that he was acting in self-defense." Ibid. That is not the case here, where defendant agreed with his counsel's assertion that because no gun was found on the victim and the State had an eyewitness who stated that the victim was unarmed at the time of the shooting, self-defense was a non-viable claim. Defendant also expressly disclaimed self-defense both in the plea colloquy and on the amended plea form.

## III.

The majority also fails to account for considerations first acknowledged by this Court in State v. Smullen, 118 N.J. 408, 415 (1990), namely, a defendant's reasonable impulse to avoid directly admitting criminal conduct. In Smullen, this Court accepted that criminal defendants are often reluctant to recognize "the distasteful reality that makes the charged conduct criminal" during their plea hearing. Ibid. Thus,

---

[2] Noting the majority's consideration of Munroe, I question why the majority vacates defendant's guilty plea rather than remand this matter to the trial court for an analysis of "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Slater, supra, 198 N.J. at 150.

6

defendants providing a factual basis often exhibit a "natural reluctance to elaborate on the details." State ex rel. T.M., 166 N.J. 319, 334 (2001).

This "natural reluctance" on the part of defendants has informed our approach to plea colloquies. For example, plea courts are permitted to elicit from defendants through leading questions admissions "necessary to ensure an adequate factual basis for the guilty plea." State v. Campfield, 213 N.J. 218, 231 (2013). Furthermore, plea courts may draw rational inferences from the defendant's admissions. Id. at 236-37.

IV.

This record reveals that defendant agreed that no gun was found on the victim at the scene, an eyewitness to the crime stated the victim was unarmed, his claim of self-defense was "not viable," and he was waiving any claim of self-defense by pleading guilty. Based on those facts, I conclude that defendant's fleeting suggestion that he acted in self-defense was a product of his natural reluctance to admit to criminally culpable conduct, not a legitimate assertion of a self-defense claim. T.M., supra, 166 N.J. at 334; Smullen, supra, 118 N.J. at 415. Thus, in my view, defendant knowingly, intelligently, and voluntarily waived his right to raise a self-defense claim and proffered a sufficient factual basis to support his guilty plea.

7

Therefore I would affirm the Appellate Division's judgment without prejudice to defendant's right to refile a PCR petition.

SUPREME COURT OF NEW JERSEY

NO.     A-49                          SEPTEMBER TERM 2013

ON APPEAL FROM      Appellate Division, Superior Court

STATE OF NEW JERSEY,

        Plaintiff-Respondent,

                v.

EDWIN URBINA,

        Defendant-Appellant.

DECIDED          June 16, 2015
                 Chief Justice Rabner                          PRESIDING
OPINION BY       Justice Fernandez-Vina
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY      Justice Solomon

| CHECKLIST | REVERSE/ VACATE/ REMAND | DISSENT |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | | X |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | | X |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | | X |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 4 | 3 |