# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1325-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LAMAR GARNER,

    Defendant-Appellant.

_____

> Submitted December 16, 2019 – Decided January 24, 2020
>
> Before Judges Ostrer and Vernoia.
>
> On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 04-10-1475.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodeserto, Designated Counsel, on the brief).
>
> Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Ali Y. Ozbek, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Lamar Garner appeals from a May 15, 2018 order denying, without an evidentiary hearing, his petition for post-conviction relief (PCR). We affirm.

I.

Garner collaterally challenges his 2006 conviction, after a guilty plea, of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4). Defendant admitted that when he was twenty-seven years old, he sexually penetrated a child over thirteen but less than sixteen years of age. Under his plea agreement, the court sentenced defendant to a seven-year term, subject to Megan's Law, N.J.S.A. 2C:7-1 to -23, and parole supervision for life, N.J.S.A. 2C:43-6.4. A pre-sentence evaluation by the Adult Diagnostic and Treatment Center (ADTC) at Avenel concluded that defendant's crime was not part of a repetitive, compulsive pattern of criminal sexual behavior, and he was not eligible for sentencing under the New Jersey Sex Offender Act, N.J.S.A. 2C:47-1 to -10. Consistent with the plea agreement, the court dismissed multiple counts charging first- and second-degree sexual assaults and related offenses.

Defendant filed his petition in 2017, long after he completed his sentence. He was incarcerated, however, awaiting a parole hearing apparently related to a charge he violated a condition of parole supervision for life. In his petition,

defendant contended that his attorney provided ineffective assistance of counsel, by failing to advise him of the consequences of his plea. He contended that if properly advised, he would have gone to trial. Defendant did not expressly identify the consequences of which he was unaware. However, in a supporting letter, he implied that he was unaware of the consequences of parole supervision, and the possibility of civil commitment. He stated that an attorney was obliged to inform a defendant that there was "a possible [sic] of future commitment, and that such commitment may be for an indefinite period up to and including lifetime commitment."

The PCR court denied the petition on the merits.[1] The court noted that under the familiar two-pronged test of Strickland v. Washington, 466 U.S. 668 (1984), defendant had to show both deficient performance and prejudice to establish he was denied his constitutional right to effective assistance of counsel. Based on the record of the plea hearing, and prior plea discussions, the PCR court found that defendant was informed of the consequences of his plea.

The PCR court noted that at a status conference over a month before his actual guilty plea, defendant confirmed his attorney's statement, on the record,

---

[1] The court decided to consider the petition, despite its late filing. Cf. R. 3:22-12 (stating that a petition must generally be filed within five years of judgment). The State does not challenge that determination. So, we do not address it.

that he had rejected an earlier plea proposal – that he plead to second-degree endangering the welfare of a child and receive an eight-year flat term – because he was concerned about the consequences of Megan's Law and community supervision for life. At that same status conference, in the course of explaining the potential sentence if convicted after trial, the judge distinguished between community supervision or parole supervision for life, and the periods of parole supervision that would apply to defendant under the No Early Release Act, N.J.S.A. 2C:43-7.2, if he were convicted of certain counts of the indictment.

The PCR court noted that at the subsequent plea hearing, the judge explained that defendant would be subject to Megan's Law and parole supervision for life, and described the consequences of that. The PCR court noted that defendant acknowledged that he had sufficiently discussed his case with his attorney. The PCR court also noted that defendant acknowledged, in the supplemental forms for pleas to sexual offenses, that he would be subject to community supervision for life, which the forms described. The PCR court concluded that there was no issue of material fact that justified an evidentiary hearing.[2]

---

[2] The indictment originally charged defendant with offenses that occurred between March 2003 and May 2004, in other words, before and after the January

On appeal, defendant presents the following point for our consideration:

> THE PCR COURT ERRED IN DENYING DEFENDANT AN EVIDENTIARY HEARING BECAUSE TESTIMONY IS NEEDED REGARDING THE SUBSTANCE OF THE LEGAL ADVICE PLEA COUNSEL PROVIDED TO DEFENDANT REGARDING A [SIC] THE PENAL CONSEQUENCES OF HIS GUILTY PLEA.

## II.

We review de novo a PCR court's factual findings made without an evidentiary hearing. State v. Harris, 181 N.J. 391, 421 (2004). We also owe no deference to the trial court's conclusions of law. Ibid. That said, we are guided by the same Strickland test that the PCR court enunciated. Having carefully reviewed the record, we discern no basis to depart from the trial court's finding that defendant knew he would be subject to parole supervision for life, and what that would entail.

---

14, 2004 effective date of the 2003 amendment to Megan's Law, N.J.S.A. 2C:43-6.4, which changed supervision from "community supervision for life" to "parole supervision for life. L. 2003, c. 267, § 1. The record includes references to both forms of supervision. Ultimately, the indictment was amended and defendant pleaded guilty to committing an offense after January 14, 2004. His main plea form disclosed that the State sentencing recommendation would include parole supervision for life, although the supplemental plea form addressed defendant's understanding of community supervision for life. Defendant was sentenced to parole supervision for life. He raises no issue directed to the discrepancy. Rather, he contends more generally that he was unaware of the consequences of parole supervision for life.

We recognize that the record does not reflect that the trial court, in accepting defendant's guilty plea, confirmed that defendant understood the possibility of civil commitment as a sexually violent predator. See State v. Bellamy, 178 N.J. 127, 138 (2003) (holding that, as a matter of fundamental fairness, a defendant must be informed of the potential of civil commitment under the Sexually Violent Predator Act, N.J.S.A. 30:4-27.24 to -27.38, notwithstanding that it is a collateral consequence of a conviction for certain sexual offenses). However, in a supplemental plea form, defendant acknowledged the risk of civil commitment.

Furthermore, there is no evidence that, even if defendant were unaware of the risk, he suffered any prejudice. Before sentencing, the ADTC determined defendant was not a compulsive sexual offender. Defendant does not contend that the State sought his commitment, or alleged he "suffers from a mental abnormality or personality disorder that makes [him] likely to engage in acts of sexual violence if not confined in a security facility for control, care and treatment." N.J.S.A. 30:4-27.26. The lack of prejudice dooms defendant's claim of ineffective assistance of counsel. It also defeats any claim that his plea did not comport with Rule 3:9-2.

To establish his ineffective-assistance-of-counsel claim, defendant must demonstrate a "reasonable probability that, but for counsel's errors," that is, the alleged failure to discuss the risk of civil commitment, "he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). "[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010). It is implausible in the extreme that defendant would have gone to trial to avoid the risk of civil commitment. That is so because the risk of commitment was apparently low, and the risk of conviction was extremely high. As for the latter, defendant apparently confessed that he sexually penetrated his victim. Also, the record refers to a DNA test that confirmed that defendant impregnated his victim, based on the DNA analysis of defendant and the victim's aborted fetus.

Under Rule 3:9-2, before accepting a guilty plea, a court must be satisfied that the defendant understands the consequences of the plea. A failure to comport with the Rule may be raised on direct appeal, in a motion to withdraw a plea, or in a petition for PCR. See State v. Urbina, 221 N.J. 509, 527-28 (2015) (addressing failure to comply with Rule 3:9-2, in that case, the requirement to secure an adequate factual basis for the plea). As noted, although the risk of

civil commitment is not a direct penal consequence of a sexual offense conviction, fundamental fairness requires that a defendant understand the risk. Bellamy, 178 N.J. at 138. Nonetheless, "[t]o vacate his plea, a defendant must show that he or she was prejudiced by enforcement of the agreement." Id. at 135. In other words, "the plea should not be vacated if knowledge of the missing conditions would not have affected defendant's decision to plead." Ibid. Defendant has failed to demonstrate that his alleged ignorance of the risk of civil commitment would have affected his decision to plead.

The PCR court correctly denied defendant's request for an evidentiary hearing. "A defendant shall be entitled to an evidentiary hearing" before a PCR court if he or she establishes a "prima facie case in support of post-conviction relief," there exist "material issues of disputed fact that cannot be resolved by reference to the existing record," and a "hearing is necessary to resolve the claims for relief." R. 3:22-10. Defendant has met none of those preconditions.

Finally, we do not reach defendant's argument, presented for the first time on appeal, that he is entitled to withdraw his plea based on the four factors in State v. Slater, 198 N.J. 145, 157-58 (2009). Defendant's petition for post-conviction relief under Rule 3:22 is distinct from a motion to withdraw a plea under Rule 3:21-1. See State v. O'Donnell, 435 N.J. Super. 351, 369-73 (App.

Div. 2014) (contrasting the two forms of relief). The two forms of relief vindicate different interests. <u>Ibid.</u> Different considerations determine whether the relief should be granted. <u>Ibid.</u> We generally decline to consider questions or issues not first presented in the trial court when an opportunity for such a presentation is available, unless the issues raised on appeal concern jurisdiction or matters of great public interest. <u>State v. Robinson</u>, 200 N.J. 1, 20 (2009) (citing <u>Nieder v. Royal Indem. Ins. Co.</u>, 62 N.J. 229, 234 (1973)). As defendant's contentions do not satisfy either <u>Nieder</u> exception, we shall not reach his newly raised contention that he should be permitted to withdraw his 2005 plea.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION