NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0403-12T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

VANCLEVE ASHLEY, a/k/a
QAWEE ALI,

    Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **October 14, 2015**
>
> **APPELLATE DIVISION**

Submitted March 9, 2015 — Decided  October 14, 2015

Before Judges Espinosa, St. John, and Rothstadt.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 03-06-1233.

Joseph E. Krakora, Public Defender, attorney for appellant, (Lauren S. Michaels, Assistant Deputy Public Defender, of counsel and on the brief).

Christopher J. Gramiccioni, Acting Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

The opinion of the court was delivered by

ROTHSTADT, J.A.D.

Defendant Vancleve Ashley, also known as Qawee Ali, appeals from the Law Division's denial of his motion to vacate his guilty plea and from his sentence, which he argues was excessive. We conclude defendant's guilty plea, the judgment of conviction, and the sentence must be vacated, the dismissed charges reinstated, and defendant allowed to re-plead or to proceed to trial.

When there has been a plea agreement and a defendant seeks to withdraw his guilty plea to multiple counts after providing an inadequate factual basis to support a guilty plea, the remedy is to vacate the plea in its entirety, reinstate the dismissed charges and restore both the State and the defendant to their positions prior to the guilty plea. State v. Campfield, 213 N.J. 218, 232 (2013) (citing State v. Barboza, 115 N.J. 415, 420 (1989)). In this case, we consider whether the same remedy applies when the guilty plea, lacking an adequate factual basis, is entered without a plea offer from the prosecutor, but after the defendant has been advised by the trial court regarding the maximum sentence the judge was "inclined" to impose. Because it was intended that the maximum ten-year sentence the judge was inclined to impose would globally address all charges and defendant provided an inadequate factual basis for the most

serious offense, it was error to deny his motion to vacate his plea and sentence him to the ten year term.

Defendant was arrested in 2002 and charged in an indictment with attempted murder, conspiracy to commit murder, and aggravated assault, exposing him to a possible sixty-year prison sentence. In 2009, defendant pled guilty to each charge in the indictment without a plea offer from the prosecutor. The judge, however, advised defendant that he might be inclined to sentence defendant to ten years with an eighty-five percent period of parole ineligibility, concurrent to sentences defendant was then serving, but the court made clear it was not making any promises to defendant. The court's "inclination" was incorporated into a written plea agreement, which the prosecutor, defendant, and his attorney signed. Defendant purportedly gave a factual basis for each of the crimes, but the prosecutor expressed concern that defendant provided inadequate factual bases for the attempted murder and conspiracy counts. The trial judge disagreed, and accepted defendant's plea to all three charges.

Prior to sentencing, defendant moved to vacate his plea. At his motion hearing before a different judge, defendant argued that he did not provide an adequate factual basis for his guilty plea to the attempted murder and conspiracy charges. He also argued that he was not advised of the parole supervision aspect

A-0403-12T2

of his sentence. The judge found no merit to the parole supervision argument, but agreed as to the lack of a factual basis for defendant's guilty pleas to the attempted murder and conspiracy counts. He granted defendant's motion as to those two counts. However, the judge concluded defendant's testimony sufficiently supported his plea to aggravated assault and, therefore, did not vacate defendant's plea to that charge. The State moved to dismiss counts one and two of the indictment and have the court sentence defendant on the aggravated assault charge. The court granted the motion and, after finding three aggravating factors and no mitigating factors, sentenced defendant to ten years imprisonment, with an eighty-five percent parole ineligibility period, which he stated was "pursuant to the plea agreement" between defendant and the former trial judge.[1] This appeal followed.

On appeal, defendant argues:

POINT I.

[DEFENDANT'S] ENTIRE PLEA MUST BE VACATED, BOTH BECAUSE THE JUDGE VACATED THE PLEAS TO THE TWO MOST SERIOUS OFFENSES WHILE REFUSING

---

[1] The court also imposed a three-year period of parole supervision, waived all financial penalties, and awarded 570 days of jail credit and 2,390 days of gap time credit. Defendant filed a motion asking the court to reconsider its calculations, which the court denied. Defendant amended his Notice of Appeal to include the denial.

TO VACATE THE PLEA TO THE REMAINING CHARGE, AND BECAUSE THE PLEA WAS NOT KNOWING AND VOLUNTARY.

A. It Was Improper For The Judge To Vacate The Plea As To The Two Most Serious Charges, But Deny The Plea-Withdrawal Motion As To The Least Serious Charge, And Then Continue To Bind [Defendant] To The Remainder Of The Plea Agreement.

B. The Unanticipated Three-Year Delay Between Plea And Sentencing Resulted In (1) A Day-For-Day Increase In Defendant's Incarceration; (2) Partially-Consecutive Sentencing, In Violation Of The Plea Agreement; And (3) The Loss Of Potential Discretionary Credits, Which Were Abolished Between His Plea And His Sentencing.

C. The Plea Was Not Knowing And Voluntary Because Even Though [Defendant] Repeatedly Informed The Court That He Was Reserving His Rights, Rather Than Waiving Them, The Judge Accepted His Plea.

POINT II.

BECAUSE [DEFENDANT] DID NOT RECEIVE THE BENEFIT OF HIS PLEA AGREEMENT TO CONCURRENT SENTENCES AND TO A MINIMUM SENTENCE, AND BECAUSE OF THE THREE-YEAR DELAY IN SENTENCING RESULTING IN MEANINGLESS GAP TIME, THE SENTENCE IS MANIFESTLY EXCESSIVE.

In his supplemental pro se brief, defendant presents the following additional issues:

5

POINT I.

IT WAS UNCONSTITUTIONAL FOR THE COURT THE STATE AND DEFENSE COUNSEL TO STIPULATE TO THE FACTUAL BASIS OF SERIOUS BODILY INJURIES IN REGARDS TO THE AGGRAVATED ASSAULT IN VIOLATION OF <u>U.S. CONST.</u> AMENDS. VI AND XIV AND <u>N.J. CONST.</u> (1947) ART I. PARS. 9 AND 10.

POINT II.

DEFENDANT DID NOT PROVIDE THE COURT WITH AN ADEQUATE FACTUAL BASIS ON COUNT THREE OF THE PLEA IN REGARDS TO THE AGGRAVATED ASSAULT THEREFORE THE COURT BELOW ABUSED ITS DISCRETION WHEN IT REFUSED TO VACATE THE ENTIRE PLEA AS BEING UNCONSTITUTIONAL IN VIOLATION . . . OF <u>U.S. CONST.</u> AMENDS. VI AND XIV AND <u>N.J. CONST.</u> (1947) ART I. PARS. 9 AND 10.

POINT III.

DEFENDANT'S PLEA SHOULD NOT HAVE BEEN ACCEPTED BECAUSE HE REPEATEDLY STATED OVER AND OVER THAT HE DID NOT SHARE THE SAME CRIMINAL INTENT TO ASSAULT VICTIM WITH [A] CAR AS HIS CO-DEFENDANT YORK <u>U.S. CONST.</u> AMENDS. VI AND XIV AND <u>N.J. CONST.</u> (1947) ART I. PARS. 9 AND 10.

We have considered defendant's arguments in light of our review of the record and applicable legal principles. We reverse.

Defendant was arrested in connection with an assault during which the victim was struck by a motor vehicle and sustained significant injuries. On June 23, 2003, a Monmouth County Grand Jury issued Indictment No. 03-06-01233, charging defendant with

6    A-0403-12T2

first-degree attempted murder, N.J.S.A. 2C:5-1, N.J.S.A. 2C:11-3 (count one); first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2a(1) and/or (2), N.J.S.A. 2C:11-3 (count two); and second-degree aggravated assault, N.J.S.A. 2C:12-1b(1) (count three).

On June 1, 2009,[2] defendant appeared before the court to enter a guilty plea to the indictment. At the beginning of the hearing, the prosecutor advised the court defendant was entering "an open-ended plea," explaining that the "State [was] not a party to any plea agreement here." The prosecutor acknowledged that, despite the fact that "there [was] no plea agreement," he was asked to sign the plea form and did so. Defense counsel stated he had reviewed the plea form and discovery with defendant. He represented that defendant was entering the plea voluntarily and understood both the charges and the nature of the proceedings.

When asked if he understood all the questions on the plea form, defendant requested the court explain the notation on page four, which read "ct. inclined to sentence [defendant] to 10 &

---

[2]   From 2003 through 2008, defendant was convicted and sentenced in both state and federal courts for various crimes. He remained in federal custody from 2006 through 2008. By the time he pled guilty in this matter, he was serving a thirty-four-year federal sentence and fifteen-year and nine-year sentences on state charges.

85% concurrent to sent. being served." The following exchange took place between defendant and the judge:

> THE COURT: . . . It says that the [c]ourt is inclined to impose a sentence of ten with no parole for 85 percent concurrent to your presen[ t] sentence. That's what it says. . . . Inclined doesn't mean promise.
>
> DEFENDANT: Oh, okay.
>
> THE COURT: I have to see whatever happens. I have to read the presentence investigations. I have to see what happens. If you have to testify in another case, whatever it is, there's an inclination but no promise. Understand?
>
> DEFENDANT: So what does "inclination" mean?
>
> THE COURT: <u>That I am leaning that way but haven't tipped over yet</u>. All right. I haven't made that my final decision. It's a thought. I told counsel, both counsel that <u>but it's no promise</u>.
>
> DEFENDANT: Okay.
>
> THE COURT: Tipping over is promise, I can't promise that that's what the sentence will be.
>
> DEFENDANT: Is it permissible to promise the sentence to be that? Is that permissible?
>
> THE COURT: Yes.
>
> DEFENDANT: Could I talk to my counselor for a second[?]
>
> (Off-the-record discussion.)
>
> THE COURT: Understand?
>
> DEFENDANT: Yes.

A-0403-12T2

THE COURT: You understand there's no promise. There's an inclination. I'm leaning in that direction but I haven't promised it until everything is all over. And I can't tell you exactly what I'm going to do.

Do you understand that? So you really are pleading guilty open-ended which there's no promise from the prosecutor, there's no recommendation from the prosecutor, and just my inclination, not a promise. Do you understand that?

DEFENDANT: Yes.

THE COURT: Is that agreeable with you?

DEFENDANT: That's the situation at hand.

THE COURT: Well, this is part of your plea.

DEFENDANT: All right.

THE COURT: Now, you and [your counsel] went over the, all the questions together?

DEFENDANT: Yes.

THE COURT: Did you understand the questions?

DEFENDANT: Basically I got a different understanding from it, from the way you explaining it, but it sounds from the way he explained it to me, that's what it sounds.

THE COURT: All right.

DEFENDANT: Appropriate.

[(Emphasis added).]

9                                          A-0403-12T2

The court proceeded to question defendant to establish whether he read and understood the plea agreement form he signed and was knowingly, intelligently, and voluntarily entering his guilty plea.[3] During the court's questioning, defendant confirmed that he understood the prosecutor was not making any recommendations about the sentence to be imposed:

> THE COURT: You know that the prosecutor has made no promises to you as to any recommendation at the time of your sentencing[?]
>
> DEFENDANT: From I was concerned the prosecutor had nothing to do with me at all at this point.
>
> THE COURT: He is the prosecutor in the case. You understand that there's no promises from the prosecutor?
>
> DEFENDANT: Yes.

When the court asked defendant for a factual basis for the crimes to which he was pleading guilty, defendant explained he was approached by a man ("Roger") on behalf of another ("Nick") to make arrangements to have Nick's attorney ("Peter")

---

[3] Defendant complicated the plea hearing when he confirmed he signed the plea agreement "without prejudice" and he "reserved" his rights. Also, he claimed he was not a citizen of the United States but, rather, a "sovereign" and a "Moorish American." See United States v. James, 328 F.3d 953, 954 (7th Cir. 2003) (explaining a defendant who states he is a "Moorish American" is a person claiming "that his ancestors came from Africa, that he is therefore a Moorish national, and that as a result he need obey only those laws mentioned in an ancient treaty between the United States and Morocco").

"straightened out" because Nick was not happy with the way Peter represented him in a domestic matter.  At a meeting with Nick and Roger, Nick offered to pay defendant five thousand dollars to have Peter's "ass beat."  Defendant subsequently contacted another man ("Raimaine") to tell him that he had a job for him, stating "[t]he job was to beat the lawyer['s] ass because he was a crook, too."  Defendant had a second meeting with Roger and Nick, during which he received half of the agreed-upon payment.

Defendant went with Raimaine to Peter's office in defendant's wife's vehicle, where they met up with "another assailant."  Ultimately, despite defendant's instructions to "wait for [Peter] to come outside to run up on him and beat the shit out of him," Raimaine struck Peter with defendant's wife's vehicle while traveling at approximately fifteen to twenty miles per hour.  Defendant emphasized that Peter was not supposed to be hit with the vehicle because "[n]obody paid [him] to commit murder," and "nobody paid nobody to do no murdering with a vehicle registered to my wife."

When asked if he realized Peter's injuries were serious, defendant replied:

> Did I know that?  No, I didn't know.  I knew
> later on when the charges came about and,
> well, Roger did some investigation.  Let me
> be honest.  He found out that the man was
> hit and he was seriously hurt.  He was hurt
> bad.

Defendant expressed his remorse for what occurred and further stated,

> [I am] willing to do my time for what the hell I did and what is involved with this idiot, the man was struck. Thank God he didn't die because we would be here talking about something else. I was paid to make sure this man get his ass whooped[4] and he got ran over.

Toward the conclusion of the hearing, the prosecutor noted that "[t]he second degree aggravated assault charge . . . need[s] . . . proof of serious bodily injury." Defense counsel stipulated to the seriousness of Peter's injuries, which satisfied the prosecutor that "there's an adequate factual basis for the second degree charge." The court stated:

> THE COURT: I find in regard to that, that the injuries that I learned about earlier in this case and now today, that that's an indication of an, under our statute, second degree serious bodily injury. So do you have any questions you want to ask of [the prosecutor], [your counsel] or of me?
>
> DEFENDANT: I just want to say I just want to leave the situation, clean my hands with it and just, you know, get this stuff resolved.

---

4 Defendant later clarified that an "ass whooping" consists of "[j]ust beat[ing] his ass, little bumps and bruises, something simple."

The prosecutor then expressed his doubt as to whether defendant's admissions constituted an adequate factual basis for the attempted murder charge and the conspiracy charge, stating he would leave the matter up to the discretion of the court. The judge accepted defendant's plea, finding an adequate factual basis as to all three charges.

Prior to sentencing, defendant moved to withdraw his guilty plea. On July 11, 2012, a different judge heard oral argument on defendant's motion. From the outset, defendant's new attorney acknowledged that there was no plea agreement with the prosecutor and that despite defendant explicitly asking for a formal deal from the court, he was given "not a promise promise, but a maybe." Defendant then proffered two bases for vacating the plea: the court failed to advise him of "the penal consequences of the plea in terms of the parole supervision aspect of it, which our Court [has] held is — is mandatory;" and the factual basis he proffered was inadequate as to the attempted murder and conspiracy counts, reminding the court that the prosecutor had acknowledged the deficiency at the hearing. Defense counsel reiterated "[t]he agreement was for a beating, never for a killing." Defendant did not attack the sufficiency of the factual basis for his guilty plea to the aggravated assault charge.

The court found there was "no doubt" that defendant voluntarily entered his plea. The judge also found no merit to the argument that defendant was not properly informed of the parole supervision aspect of his sentence, stating that, in light of defendant's upcoming federal sentence, "it is not a material factor." However, the judge agreed that there was an insufficient factual basis to support the attempted murder and conspiracy charges; therefore, he granted the motion as to counts one and two. As to the third count, the judge found "all the necessary components to support a plea of guilty," and denied the motion to vacate as to that count. He commented, "[d]efendant through his own words clearly indicate[d] he knew what they were doing. . . . There's no question they were down there to injure [Peter] and they did."

Immediately following the plea withdrawal hearing, the State moved to dismiss counts one and two and sentence defendant on the aggravated assault charge. The State declined to be heard as to sentencing. Defense counsel acknowledged that defendant could be sentenced to a maximum of ten years with an eighty-five percent period of parole ineligibility. However, he requested that the court consider a lesser sentence, claiming that Raimaine, the "primary assaulter," received a sentence of

14                                                    A-0403-12T2

eight years in exchange for his cooperation with the State. Defendant argued that he never admitted to assaulting Peter.

Noting that defendant had fifty adult arrests, the judge found that aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk of defendant committing another offense), six, N.J.S.A. 2C:44-1(a)(6) (extent of defendant's prior criminal record and seriousness of offense), and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others) applied. The judge found no mitigating factors applicable. The judge stated he had "completely eliminated all the first degree counts," was sentencing defendant pursuant "to the plea agreement that was between him and" the plea judge, and imposed the ten-year sentence with the eighty-five percent parole ineligibility period, concurrent to the sentence he was currently serving.[5] This appeal followed.

We address defendant's argument that, once the court dismissed two of the three counts to which he pled guilty pursuant to a plea agreement, the trial court was required to vacate his guilty plea to all three charges. We agree.

---

[5] Defendant's judgment of conviction stated: "The court followed the plea agreement . . . . This was a plea agreement between the prosecutor and the defendant. It appears fair and in the interest of justice. The court will impose the recommended sentence." (emphasis added). This was obviously an error.

15                                    A-0403-12T2

"A plea agreement is an all-or-nothing arrangement." Barboza, supra, 115 N.J. at 422. "The cornerstone of the plea-bargaining system is the 'mutuality of advantage' it affords to both the defendant and the State." Id. at 420.

Negotiations for plea agreements take place between the defendant and the State, ibid., as judges are prohibited from taking part in plea discussions. R. 3:9-3(a). However, in the absence of a plea agreement, the court may

> indicate . . . the maximum sentence it would impose in the event the defendant enters a plea of guilty, assuming, however, . . . that the information in the presentence report at the time of sentence is as has been represented to the court at the time of the disclosure and supports its determination that the interests of justice would be served thereby. . . . [I]f the plea is to be based on the court's conditional indication about the sentence, all the terms of the plea, including the court's concurrence or its indication concerning sentence, shall be placed on the record in open court at the time the plea is entered. Nothing in this Rule shall be construed to authorize the court to dismiss or downgrade any charge without the consent of the prosecutor.
>
> [R. 3:9-3(c).]

See also State v. Salentre, 275 N.J. Super. 410, 417 (App. Div.) (stating that the court rules permit the parties to "obtain the judge's view as to 'maximum sentence' he might impose if defendant entered a plea"), certif. denied, 138 N.J. 269 (1994).

This does not mean that a judge is bound to impose the sentence he previously indicated, even if the presentence report is as expected. Rule 3:9-3(e) provides,

> If at the time of sentencing the court determines that the interests of justice would not be served by effectuating the agreement reached by the prosecutor and defense counsel or by imposing sentence in accordance with the court's previous indications of sentence, the court may vacate the plea or the defendant shall be permitted to withdraw the plea.

When a court gives an inclination of a sentence in a plea agreement, it is not an open plea to the indictment. "An 'open plea' [is] one that d[oes] not include a recommendation from the State, nor a prior indication from the court, regarding sentence." State v. Kates, 426 N.J. Super. 32, 42 n.4 (App. Div. 2012) (emphasis added) (citing State v. McDonald, 209 N.J. 549, 552 (2012)), aff'd, 216 N.J. 393 (2014).

When a court has given an inclination of a maximum sentence, but subsequently determines that there was an inadequate factual basis to support the plea, absent an agreement between the State and defendant,

> [t]he remedy . . . is an order vacating the guilty plea and restoring both parties to their positions prior to the trial court's acceptance of the plea. Barboza, supra, 115 N.J. at 420. If an appellate court determines that "a plea has been accepted without an adequate factual basis, the plea, the judgment of conviction, and the sentence

> must be vacated, the dismissed charges reinstated, and defendant allowed to re-plead or to proceed to trial." Ibid.

[Campfield, supra, 213 N.J. at 232.]

The plea must be vacated regardless of whether a defendant gave a factual basis for all of the charges to which he pled guilty, or less than all of the charges, if there is a material change to the reasons why he pled in the first instance. See R. 3:9-2; see also Campfield, supra, 213 N.J. at 243 n.5 (Albin, J., dissenting) ("[W]hen a guilty plea to one charge is vacated, the plea agreement as a whole is a nullity, and the State retains the right to proceed to trial on all charges in the indictment (citing Barboza, supra, 115 N.J. at 420)). As the Court explained, "[this] procedure . . . best reflects the concerns of fundamental fairness to defendants and of procedural simplicity, which benefits all parties involved and the criminal justice system." Barboza, supra, 115 N.J. at 427.

Contrary to the State's argument here, the fact that the State did not participate in the plea is of no consequence. The requirement that the entire plea be vacated is equally applicable whenever the defendant's exposure to prison time is dramatically reduced from what it was when a defendant entered the plea. "Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be

crucial to the decision whether to plead guilty." United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992). Sentencing a defendant in accordance with the original plea after his exposure is reduced violates the defendant's "right to make a reasonably informed decision whether to accept a plea offer," because knowledge of potential sentence exposure is crucial to the decision of whether to plead guilty. Ibid.; see also State v. Nichols, 71 N.J. 358, 361 (1976).

Defendant pled guilty after the court indicated that it would consider limiting his exposure to ten years, rather than the sixty years he was facing. His plea to the greater offenses was vacated and dismissed, thereby dramatically reducing his exposure to ten years, the maximum sentence for a second-degree aggravated assault and the sentence to which the court was inclined to limit his exposure when he was facing sixty years.

Under these circumstances, we are constrained to reverse the court's denial of defendant's motion to vacate the entirety of his plea and remand the matter for reinstatement of the dismissed charges, allowing defendant to re-plead or proceed to trial. In doing so, we stress to our courts the importance of trial judges scrutinizing the factual basis offered by defendants in support of guilty pleas and the need for the rejection of those pleas that lack an adequate factual basis so

19

as to avoid similar outcomes in the future. See State v. Urbina, 221 N.J. 509, 527 (2015) ("'[e]ven if a defendant wished to plead guilty to a crime he or she did not commit, he or she may not do so. No court may accept such a plea.'" (quoting State v. Smullen, 118 N.J. 408, 415 (1990))).

Because we reverse the court's denial of the motion to vacate his plea and judgment of conviction, we need not reach defendant's other arguments.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0403-12T2