## NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4599-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KEITH A. CRUMP,

     Defendant-Appellant.

_____

Submitted November 26, 2018 – Decided December 4, 2018

Before Judges Haas and Sumners.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 13-12-2233.

Joseph E. Krakora, Public Defender, attorney for appellant (Alicia J. Hubbard, Assistant Deputy Public Defender, of counsel and on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After the trial judge denied defendant Keith A. Crump's motion to suppress fifty packets of heroin found in his possession, defendant entered an "open plea"[1] to third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1) (count one); third-degree possession of heroin with intent to distribute it, N.J.S.A. 2C:35-5(b)(3) (count two); and third-degree attempted distribution of heroin, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:35-5(b)(3) (count three).  The judge sentenced defendant on count two to seven years in prison, with a three-year period of parole ineligibility, and to concurrent five-year terms on counts one and three.

On appeal, defendant raises the following contention:

> THE EVIDENCE SHOULD BE SUPPRESSED BECAUSE THE STOP AND SEARCH OF [DEFENDANT] BASED ON THE UNCORROBORATED AND VAGUE TIPS OF CONFIDENTIAL INFORMANTS WERE UNCONSTITUTIONAL (U.S. CONST., AMENDS. IV AND XIV; N.J. CONST. (1947), ARTICLE I, PAR.7).

After reviewing the record in light of this argument and applicable law, we affirm.

---

[1] "An 'open plea' [is] one that d[oes] not include a recommendation from the State nor a prior indication from the court, regarding sentence." State v. Ashley, 443 N.J. Super. 10, 22 (App. Div. 2015) (alterations in original) (emphasis omitted) (quoting State v. Kates, 426 N.J. Super. 32, 42 n.4 (App. Div. 2012) aff'd, 216 N.J. 393 (2014)).

The judge conducted an evidentiary hearing concerning defendant's suppression motion, and rendered a thorough written decision setting forth detailed findings of fact and conclusions of law. Therefore, a summary will suffice here.

In June 2013, an informant told Officer Christopher Acevedo that a man, whose nickname was "Country," was selling heroin in, among other places, store parking lots in Hazlet, and that he had purchased heroin from this individual. The informant, who had given accurate information to Officer Acevedo on a prior occasion, provided a physical description of "Country" and stated he drove a red or "purplish" sedan that the informant thought was a Mitsubishi. Officer Acevedo shared this information with an officer in Matawan Borough, who told him that "Country" was defendant.

In early August 2013, a second informant told Officer Acevedo that he had also purchased heroin from defendant.[2] This informant stated that defendant sold heroin in, among other places, the K-Mart Plaza parking lot in Hazlet.

Armed with this information, the police set up surveillance units in the parking lots for the K-Mart and another shopping center on the afternoon of

_____

[2] This individual was a first-time informant, and gave the information to Officer Acevedo following his arrest on a theft charge.

 A-4599-16T4

August 5, 2013. In the K-Mart parking lot, Officer Vincent Quinn saw defendant sitting in the driver's seat of a red sedan, which was an Oldsmobile rather than a Mitsubishi. The car was parked some distance away from the stores. Defendant's physical description matched that given to Officer Acevedo by the first informant.

As he watched defendant, Officer Quinn saw a second individual, later identified as co-defendant Andrew Bossick, in the parking lot. The officer noticed that Bossick was not walking from either a store or another vehicle, and was talking on a cellphone as he approached defendant's car. Bossick then got into the passenger side of the car and began talking to defendant.

At that point, the police moved in to conduct an investigatory stop. As they drove toward defendant, he began to pull away. The officers then activated their emergency lights. After driving a short distance, defendant stopped his car near an exit to the parking lot.

Officer Michael Duncan told defendant to turn the car off and toss the keys outside. Defendant complied. Officer William Agar, Jr. directed Bossick to get out of the car. When the officer asked Bossick whether he had offered to buy anything from defendant, Bossick admitted that he had given $200 to

defendant for some heroin, but the police arrived before defendant could complete the transaction.[3]

Officer Duncan then asked defendant if he had any heroin in his possession. Defendant said no, but the officer patted down the outside of defendant's pants pocket and felt "[a] small square object" that, upon examination, was found to be fifty packets of heroin.

At the suppression hearing, defendant argued that the police lacked the reasonable and particularized suspicion necessary to conduct the investigatory stop that led to the seizure of the heroin. The trial judge rejected this contention, noting that the information provided by the two informants was corroborated by the officers' observations in the parking lot and provided them with the reasonable suspicion needed under the totality of the circumstances.

On appeal, defendant again argues that the judge erred in finding that the investigatory stop was permissible. We disagree.

Our review of a trial judge's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). In reviewing a motion to suppress evidence, we must uphold the judge's factual findings, "so long as those findings

---

[3] Bossick was later charged with third-degree attempted possession of heroin, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:35-10(a)(1).

A-4599-16T4

are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (quoting Robinson, 200 N.J. at 15). Additionally, we defer to a trial judge's findings that are "substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Ibid. (alteration in original) (quoting Robinson, 200 N.J. at 15). We do not, however, defer to a trial judge's legal conclusions, which we review de novo. Ibid.

It is well settled that the police may lawfully stop a motor vehicle and detain the occupants on less than probable cause in order to investigate suspicious conduct. State v. Stovall, 170 N.J. 346, 356 (2002). Such an "investigatory stop," also known as a Terry[4] stop, is characterized by a detention in which the person approached by a police officer would not reasonably feel free to leave, even though the encounter falls short of a formal arrest. Id. at 355-56. During a Terry motor vehicle stop, a police officer may detain an individual for a brief period, if the stop was "based on reasonable and articulable suspicion that an offense . . . has been or is being committed." State v. Bacome, 228 N.J. 94, 103 (2017) (quoting State v. Carty, 170 N.J. 632, 639-40 (2002)). Once a lawful stop is made, the subsequent reasonable detention of the occupant of the

_____

[4] Terry v. Ohio, 392 U.S. 1 (1968).

A-4599-16T4

motor vehicle constitutes a permissible seizure. State v. Dickey, 152 N.J. 468, 475 (1998). The burden is on the State to show by a preponderance of the evidence that it possessed sufficient information to give rise to the required level of suspicion. State v. Pineiro, 181 N.J. 13, 19-20 (2004).

"The principal components of a determination of reasonable suspicion . . . [are] the events which occurred leading up to the stop . . . and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to a reasonable suspicion . . . ." Stovall, 170 N.J. at 357 (alteration in original) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). Determining whether a reasonable and articulable suspicion exists depends upon the totality of the circumstances. Pineiro, 181 N.J. at 22. In evaluating the totality of the circumstances surrounding a Terry stop, a reviewing court must balance "the State's interest in effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions." State v. Davis, 104 N.J. 490, 504 (1986).

In reviewing the totality of the circumstances, we are also required to "give weight to 'the officer's knowledge and experience' as well as 'rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise.'" State v. Citarella, 154 N.J. 272, 279 (1998)

(quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)). "The fact that purely innocent connotations can be ascribed to a person's actions does not mean that an officer cannot base a finding of reasonable suspicion on those actions as long as 'a reasonable person would find the actions are consistent with guilt.'" Id. at 279-80 (quoting Arthur, 149 N.J. at 11).

Information provided to the police by a reliable informant may generate the reasonable suspicion necessary for an investigatory stop. Davis, 104 N.J. at 506. However, even if the informant has never worked with the police before, the information provided by the informant, once corroborated by the observations of the police, can provide reasonable suspicion to justify an investigatory stop. State v. Birkenmeier, 185 N.J. 552, 562 (2006). An informant's tip is reliable if, under the totality of the circumstances, there is a sufficient basis for crediting the tip. State v. Smith, 155 N.J. 83, 92 (1998).

There is no mathematical formula for deciding whether the totality of circumstances provides the required articulable or particularized suspicion and, as the case law suggests, the test is qualitative, not quantitative. Stovall, 170 N.J. at 370. The New Jersey Supreme Court has recognized that although "veracity" and "basis of knowledge" are relevant elements in demonstrating probable cause, which is a higher standard than that necessary for an

A-4599-16T4

investigatory stop, neither is essential under the totality of the circumstances test. Smith, 155 N.J. at 93. See also State v. Novembrino, 105 N.J. 95, 121-23 (1987). "A deficiency in one of those factors 'may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.'" State v. Zutic, 155 N.J. 103, 110-11 (1998) (quoting Illinois v. Gates, 462 U.S. 213, 233 (1983)).

Applying these principles, we discern no basis for disturbing the judge's determination that the police properly conducted an investigatory stop of defendant as he attempted to leave the K-Mart parking lot. Contrary to defendant's contention, the two informants provided Officer Acevedo with sufficient, particularized information that defendant was selling heroin in store parking lots in Hazlet, including the K-Mart parking lot where the police found him in the midst of a drug transaction with Bossick. The informants knew that defendant was selling heroin because they each previously purchased this drug from him during the summer of 2013.

The first informant had previously provided Officer Acevedo with reliable information and, as discussed above, the fact that the second informant was cooperating with the police for the first time was of little moment because the information he provided matched what the first informant had already told the

A-4599-16T4

officer. The police were able to independently corroborate both of the informants' accounts during their surveillance. Defendant fit the physical description provided by the first informant, was in the K-Mart parking lot, and was driving a red sedan, although it was an Oldsmobile rather than a Mitsubishi. Defendant was also engaging in what reasonably appeared to be a drug transaction with Bossick given the information provided by the informants, defendant's location in the middle of the parking lot, and Bossick's unusual actions in approaching the car. Once the car was stopped, Bossick admitted he paid defendant $200 for heroin, and Officer Duncan thereafter found the fifty packets of heroin in defendant's pants pocket during a Terry pat down.

Viewing the clear mosaic of these circumstances, we conclude that the accuracy of the informants' tips was corroborated by the independent observations of the police officers, thus generating reasonable articulable suspicion to justify the investigatory stop of defendant. Therefore, the trial judge properly denied defendant's suppression motion.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4599-16T4