# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0161-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KAWAMI R. JUNOR,

     Defendant-Appellant.

_____

Argued February 25, 2025 – Decided April 9, 2025

Before Judges Gilson and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 21-05-0394.

Rachel Glanz, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Rachel Glanz, of counsel and on the briefs).

Alexandra E. Harrigan, Assistant Prosecutor, argued the cause for respondent (Raymond S. Santiago, Monmouth County Prosecutor, attorney; John J. Santoliquido, Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

Shortly after they met, defendant Kawami Junor drove N.D. to a beach in Sandy Hook.[1] After a series of unwanted advances, defendant's conduct towards N.D. became increasingly forceful. While in the backseat of his locked car, defendant pulled down N.D.'s shorts, ripped her underwear off, inserted his finger into her vagina, and placed his mouth on her vagina. N.D. was eventually able to unlock the car door and get away from defendant. As defendant drove off, he ran over N.D.'s ankle.

A jury convicted defendant of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1); fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b); and third-degree criminal restraint, N.J.S.A. 2C:13-2(a). After the jury was dismissed, a judge found defendant guilty of fourth-degree assault by auto, N.J.S.A. 2C:12-l(c)(l).

Thereafter, the sentencing court granted the State's motion to impose a discretionary extended term sentence because defendant was found to be a persistent offender under N.J.S.A. 2C:44-3(a). On the conviction for sexual assault, defendant was sentenced to an extended term of eighteen years in prison

---

[1] We use initials for the victim and witnesses to protect their privacy interests. See Rule 1:38-3(c)(12).

subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant's conviction for criminal sexual contact was merged with the assault conviction, but the court also sentenced defendant to a concurrent term of eighteen months in prison. On the conviction for criminal restraint, defendant was sentenced to five years in prison, to run concurrent to his sentence on the sexual assault conviction.

Defendant appeals from his convictions and sentence. Having reviewed the evidence and law, we affirm defendant's convictions, vacate his sentence, and remand for further proceedings, including a new sentencing.

I.

We summarize the facts from the evidence at trial. Defendant and N.D. first met on June 5, 2020, while N.D. was walking in her neighborhood. After a brief conversation, the two exchanged phone numbers.

The following morning, on June 6, 2020, defendant texted N.D. and invited her to go to the beach with him. N.D. declined. Later that afternoon, defendant called N.D. and again asked her to go to the beach with him. Again, N.D. declined. Eventually, however, N.D. agreed to meet defendant on a street near her home.

A-0161-23

When defendant arrived, he was accompanied by his cousin. Defendant brought up the beach again, and N.D. ultimately agreed to go with defendant. Thereafter, defendant dropped his cousin off and he and N.D. drove to a beach in Sandy Hook.

While stopped at a red light, defendant attempted to kiss N.D. N.D. rejected defendant's advance and told defendant that she did not want him to touch her. In response, defendant told N.D. that he wanted her to be his girl, but N.D. retorted that he was "moving way too fast for [her.]" The pair eventually arrived at the beach.

Defendant then walked N.D. to a "secluded area on the beach." Defendant tried to kiss N.D. again but she said no. As N.D. walked towards the water, defendant "grabbed [her]," and "[tried] to kiss [her]." At that point, N.D. informed defendant that she wanted to go, and defendant agreed to take her home.

When they arrived back at the car, defendant opened the back door and directed N.D. to get into the back seat. Defendant then turned the car on and got into the back seat with N.D. Defendant again told N.D. that he "want[ed] [her] to be his girl" and tried to kiss her. N.D. "didn't want to be kissed" but "let [defendant] peck [her] . . . [until] it just progressively [got] worse."

4

N.D. testified that as defendant's advances became more forceful, she expressly told him to stop and tried to push him off her. Defendant, however, persisted, locked the car door, and pulled N.D.'s shorts down. N.D. remembers screaming: "[y]ou're trying to rape me," "stop," and "I won't tell anybody[] if you just let me go." But defendant did not stop and eventually ripped N.D.'s underwear off her. Defendant then "insert[ed] his finger inside of [her vagina]" and "put his mouth on [her] vagina."

N.D. continued to resist, "trying to get the car door open, trying to scream, . . . pulling [defendant's] hair, scratching him, [and] trying to fight him off [her]." N.D. saw defendant's exposed penis shortly before she was able to get the car door open. Once the door was open, N.D. fell out of the car and landed on her back. Defendant then "jumped from the back seat to the front seat . . . and . . . pulled off real[ly] fast." While driving away, defendant's car ran over N.D.'s right ankle.

E.R. and her husband, S.R., were in the beach parking lot when E.R. saw N.D. fall out of defendant's car. E.R. told S.R. what she had observed, which prompted S.R. to approach N.D. and offer assistance. N.D., who was still unclothed below the waist, asked S.R. not to come any closer. S.R. quickly flagged down a nearby park ranger.

5

When the ranger approached N.D., she was "in hysterics." While the ranger was speaking with N.D., she received phone calls and text messages from defendant stating that "he was going to come back and pick her up." The ranger asked N.D. to tell defendant to come back to the parking lot, which she did, but defendant did not return.

Shortly thereafter, emergency medical service personnel arrived at the scene and transported N.D. to a hospital. N.D. remained at the hospital for several hours to have her ankle X-rayed and to undergo a sexual assault nurse examination (SANE). However, after learning that the SANE examination would take four hours, and because she was "already exhausted from what had happened," N.D. left the hospital without being examined. Prior to her departure, officials collected N.D.'s torn underwear and advised her not to shower until after her examination.

N.D. returned to the hospital the following morning. She brought back the shorts she had been wearing the prior day and completed the SANE examination. As part of the examination, a forensic nurse collected an external genital swab, a vaginal swab, a cervical swab, a buccal swab, and a fingernail swab from N.D.

A-0161-23

Forensic analysis of the swabs later revealed the presence of amylase, a constituent of saliva, on the external genital swab. Likewise, forensic analysis revealed the presence of amylase on the crotch panel of N.D.'s shorts. DNA analysis of the external genital swab, the shorts, and the swab of N.D.'s left-hand fingernail revealed the presence of DNA from the same male contributor on each sample.

On June 11, 2020, investigators interviewed defendant about the incident at the beach. Defendant provided a different account of what had happened. Defendant claimed that after he got into the back seat of his car, he and N.D. started kissing each other. Defendant further stated that N.D. only left his car after the two got into a dispute concerning her ex-boyfriend. At the conclusion of the interview, investigators obtained a buccal swab from defendant.

DNA analysis of defendant's buccal swab later revealed that he was a match for the male DNA recovered from the external genital swab obtained from N.D., a match for the male DNA recovered from the swab of N.D.'s left-hand fingernail, and the source of the male DNA recovered from the crotch panel of N.D.'s shorts.

Thereafter, a grand jury indicted defendant for three crimes: second-degree sexual assault; fourth-degree criminal sexual contact; and third-degree

A-0161-23

criminal restraint. In a complaint-warrant, defendant was also charged with fourth-degree assault by auto.

On December 20, 2021, a plea-cutoff hearing was held before a trial judge. At the hearing, the State and defense counsel both informed defendant that he was eligible to be sentenced to a discretionary extended term of imprisonment due to his prior criminal record. Additionally, the judge and defendant discussed the State's pretrial memorandum, which had been prepared that day.

The pretrial memorandum stated that defendant qualified for an extended term sentence but incorrectly stated that he faced a maximum sentence of fifteen years. During the hearing, however, the judge told defendant that he could be sentenced to up to twenty years in prison. In that regard, the judge had the following discussion with defendant:

> Q     All right. Did you go over the pretrial memorandum form with your attorney [defendant]?
>
> A     Yes, Your Honor.
>
> Q     And did he answer any questions you may have had about this pretrial memo form?
>
> A     Yes, Your Honor.
>
> Q     And did he answer your questions to your satisfaction about really everything that's going on here today?

A     Yes, Your Honor.

Q     All right.  So, let me go over with you, also, because I just want to make sure you're comfortable with what's going on. . . . So, you're charged with three different crimes under Indictment 21-05-394.  The first count is the most serious one, which is, you're charged with sexual assault, which is a second[-]degree offense.  Wherein you are looking at, on the offense, is normally a ten-year sentence.

However, because you're [exposed to] a discretionary extended term, and I'll explain that to you, . . . you could receive a sentence like . . . it was a first [-]degree offense, so now you're looking at exposure up to [twenty] years in jail on this charge.  Do you understand that?

A     How is that?

. . . .

Q     So, what that mean[s] is . . . because . . . you have been sentenced on two different occasions for indictable crimes prior to this case going to trial and you're over the age of [eighteen], which you are, [you] are exposed to what's called a discretionary extended term, meaning the [c]ourt would make a determination whether . . . the amount of time you would get if convicted would be appropriate in that second[-]degree range, which is what you're charged with or I have the discretion to actually sentence you in the first[-]degree range because of these two prior convictions.

Now, I don't know what I'm going to do.  I have no idea.  I haven't heard any facts of this case.  I have no idea what the evidence is going to show.  But if you're convicted of that second[-]degree offense of

sexual assault and the Prosecutor's Office then requests an extended term, I have to do the legal analysis of whether . . . I can sentence you within that second [-]degree range or I say, you know what, based upon his prior record and based upon the crime as I just heard it, I think I need to impose him to a sentence within the first[-]degree range and that's a legal determination.

So -- and I do that by way of looking at aggravating and mitigating factors and I decide what's appropriate for you. So, that's why your exposure is a lot more than just ten [years] potentially on this case. Did you -- do you understand that now?

A     Yes, I do.

Later during the hearing, the following exchange regarding defendant's sexual assault charge also occurred:

Q     All right, . . . again though, the biggest exposure that you have is the sexual assault [charge], because if you're convicted of that, in and of itself, you're looking at exposure of up to [twenty] years in jail. Do you understand that?

A     Understood.

Shortly thereafter, the judge clarified defendant's potential sentencing exposure under a discretionary extended term for a third time.

Q     All right. And this sexual assault again, because of the type of crime it is, you'd be subject to [NERA]. So, that means, you would have to serve [eighty-five] percent of whatever sentence I impose. So if I imposed a five year sentence for example, it would be four years, three months and four days.

A    Understood.

Q    Right, but then for example, if I sentence you to the max, which [is] [twenty] years then you would have to serve [seventeen] years before you'd be eligible for parole.  Do you understand that?

A    Understood.

Thereafter, defendant rejected the State's plea offer of eight years of imprisonment subject to NERA.  After defendant initially expressed his intent to reject the offer, the judge clarified his understanding once more, stating: "[J]ust to be clear . . . you are looking at the potential of a more [severe] sentence than what this plea offer is right now if you go to trial and [are] convicted.  Do you understand that?"  Defendant answered in the affirmative, stating that he was rejecting the plea offer because of "Megan's Law and the parole provision for life."  Defendant explained that he wanted to "take [his] case to trial."

Less than two months later, at another pretrial hearing on February 8, 2022, the judge again discussed the State's pretrial memorandum with defendant. At that hearing, however, the judge incorrectly told defendant that "the maximum on[e] can receive on [the] offense [for sexual assault] is actually [fifteen] years."

A four-day jury trial was conducted in late February and early March 2022.  The State's evidence included testimony from N.D. and DNA evidence.

11

Defendant also testified. After hearing all the evidence, the jury found defendant guilty of all three criminal charges. After the jury was dismissed, the trial judge found defendant guilty of assault by auto.

In April 2022, the State moved for a discretionary extended term on the sexual assault conviction pursuant to N.J.S.A. 2C:44-3(a). The trial judge determined that defendant was a "persistent offender" and granted the State's motion. Defendant was then sentenced on August 24, 2022.

On the conviction for sexual assault, defendant was sentenced to an extended term of eighteen years in prison subject to NERA. Defendant was also sentenced to parole supervision for life and required to report and register under Megan's Law, N.J.S.A. 2C:7-2, once he was released on parole. The court stated it was merging the conviction for criminal sexual contact with the sexual assault conviction but then sentenced defendant to a concurrent term of eighteen months in prison on that conviction. On the conviction for criminal restraint, defendant was sentenced to a concurrent term of five years in prison. Defendant was sentenced to monetary penalties on the assault by auto conviction. Finally, defendant was required to pay a mandatory Sex Crime Victim Treatment Fund Penalty of $1,000 and other fines and penalties totaling $2,930. So, defendant's

12

aggregate prison sentence was for eighteen years, with just over fifteen years of parole ineligibility.

Defendant now appeals from his convictions and sentence.

II.

On appeal, defendant makes five arguments, which he articulates as follows:

I. DEFENDANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE COURT ACTIVELY MISINFORMED HIM ABOUT HIS SENTENCING EXPOSURE DURING THE PRETRIAL CONFERENCE.

II. A JUDGMENT OF ACQUITTAL SHOULD HAVE BEEN ENTERED ON THE CRIMINAL RESTRAINT CHARGE BECAUSE THE STATE FAILED TO PROVE THAT THE DEFENDANT KNOWINGLY RESTRAINED THE VICTIM UNDER CIRCUMSTANCES EXPOSING HER TO THE RISK OF SERIOUS BODILY INJURY.

III. THE MATTER MUST BE REMANDED FOR RESENTENCING BECAUSE THE COURT FAILED TO EXPLAIN HOW IT ARRIVED AT A SENTENCE OF 18 YEARS FOR THE SECOND-DEGREE SEXUAL ASSAULT.

IV. THE COURT SHOULD NOT HAVE IMPOSED ANY FINES OR FEES ON THE CRIMINAL SEXUAL CONTACT CONVICTION, WHICH MERGED INTO THE SEXUAL ASSAULT CONVICTION.

13

V. SENTENCING DEFENDANT AS A PERSISTENT OFFENDER WITHOUT GRAND AND PETIT JURY FINDINGS OF THE PREDICATE FACTS VIOLATED DUE PROCESS AND HIS RIGHT TO A JURY TRIAL.

We are not persuaded by defendant's arguments concerning his convictions. Because the law now requires a jury to make the findings necessary to sentence defendant to an extended term, and because there were other errors in defendant's sentence, we vacate the sentence and remand for further proceedings, including a new sentencing.

A. The Plea Process.

"The practice of plea bargaining has become institutionalized in our criminal justice system." State v. Bellamy, 178 N.J. 127, 134 (2003) (first citing State v. Thomas, 61 N.J. 314, 321 (1972); and then citing R. 3:9-3). "Notions of fairness apply to each side in the plea bargaining process." Ibid. (quoting State v. Warren, 115 N.J. 433, 443 (1989)) (internal quotation marks omitted). "Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." State v. Ashley, 443 N.J. Super. 10, 23 (App. Div. 2015) (quoting United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992)) (internal quotation marks omitted). Accordingly, a defendant "has the right not to be 'misinformed' about

14

a material element of a plea agreement." Bellamy, 178 N.J. at 134 (quoting State v. Nichols, 71 N.J. 358, 361 (1976)).

"Where the prosecutor reserves the right to move for an extended term, it is incumbent upon the trial judge at the time of the plea to make certain that the defendant is made aware of the possible sentencing consequences under N.J.S.A. 2C:43-7." State v. Cartier, 210 N.J. Super. 379, 381 (App. Div. 1986). See R. 3:9-1(f) (noting that "the court . . . shall address the defendant to determine that the defendant understands . . . the sentencing exposure for the offenses charged, if convicted"). "[A] defendant cannot be sentenced to an extended term unless he [or she] has been apprised of the increased sentences permissible under [the law]." Cartier, 210 N.J. Super. at 382-83.

In the pretrial memorandum and at the plea-cutoff hearing, defendant was informed (1) that he faced a discretionary extended term sentence; and (2) that he could be sentenced to up to twenty years in prison. The State's pretrial memorandum, prepared on December 20, 2021, stated that defendant qualified for an extended term sentence, but incorrectly noted that he faced a maximum sentence of fifteen years. Nevertheless, at the plea-cutoff hearing, the judge and defendant discussed both the pretrial memorandum and the maximum sentence that defendant could be exposed to under a discretionary extended term. In that

15

regard, the judge informed defendant three different times that he faced a maximum of twenty years in prison on the sexual assault charge. The judge also emphasized that defendant was facing "the potential of a more [severe] sentence than . . . [the] plea offer . . . if [he] [went] to trial and [was] convicted." Following each exchange, defendant confirmed that he understood his sentencing exposure.

Defendant now focuses on a later conference where the judge incorrectly stated that the maximum sentence defendant could receive was fifteen years. Significantly, however, at that conference defendant was not considering the State's original plea offer, which he had already rejected, or a new plea offer. Just as importantly, the record does not demonstrate that defendant did not fully understand his sentencing exposure. He had previously been expressly and correctly told he could be sentenced to up to twenty years in prison. Consequently, defendant's due process rights were not violated during the plea-bargaining process.

B.    The Criminal Restraint Conviction.

At trial, defendant moved for a judgment of acquittal on the criminal restraint charge, contending that the State failed to present evidence that N.D. was restrained in circumstances exposing her to a risk of serious bodily injury.

A-0161-23

The trial court denied that motion, and defendant now repeats the same argument on appeal.

In determining whether a judgment of acquittal is warranted, the trial court "must determine whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." State v. Williams, 218 N.J. 576, 594 (2014) (citing State v. Reyes, 50 N.J. 454, 458-59 (1967)). Appellate courts use that same standard in conducting a de novo review of a denial of a motion for acquittal. Id. at 593-94.

"A person commits a crime of the third degree if he [or she] knowingly . . . [r]estrains another unlawfully in circumstances exposing the other to risk of serious bodily injury . . . ." N.J.S.A. 2C:13-2(a). Accordingly, there are three elements to criminal restraint in the third degree. First, the State must prove that defendant knowingly restrained the victim. Second, the State must prove that defendant knew that the restraint was unlawful. Third, and finally, the State must prove that the restraint occurred under circumstances in which defendant knowingly exposed the victim to a risk of serious bodily injury. See Model Jury

Charges (Criminal), "Criminal Restraint (N.J.S.A. 2C:13-2(a))" (rev. June 19, 2000) (citation reformatted).

Defendant argues that the State presented no evidence that N.D. suffered serious bodily injury or that he knew that there was a risk of N.D. suffering serious bodily injury when he restrained her. The evidence at trial refutes that argument.

N.D. testified to the violent nature of the sexual assault committed by defendant. In that regard, she explained that defendant locked her in his car, pulled her shorts down, tore off her underwear, inserted his fingers into her vagina, and put his mouth on her vagina, all against her will. N.D. also explained that she physically struggled with defendant, "pulling his hair, scratching him, [and] trying to fight him off [her]," while the assault was occurring.

The trial court gave the jury the model charge on criminal restraint. In doing so, the court correctly explained all three elements of the crime, including that the jury had to find beyond a reasonable doubt "that the restraint was under circumstances in which the defendant knowingly exposed [N.D.] to a risk of serious bodily injury." The trial court also correctly instructed the jury that "[t]he term serious bodily injury means bodily injury which creates a substantial

risk of death, or which causes serious permanent disfigurement or protracted loss or impairment of the functions of any bodily member or organ."

The New Jersey Supreme Court has recognized that second-degree sexual assault, of which defendant was convicted, is one of the "most serious forms of sexual violence." State v. Rangel, 213 N.J. 500, 510 (2013). In addition, the Court has stated that "severe mental anguish can satisfy the serious bodily harm element for" aggravated sexual assault. Collins v. Union Cnty. Jail, 150 N.J. 407, 422 (1997) (citing State v. Walker, 216 N.J. Super. 39, 43-44 (App. Div. 1987), certif. denied, 108 N.J. 179 (1987)). Consequently, we hold that N.D.'s testimony, together with the other evidence presented by the State, was sufficient for the jury to find, beyond a reasonable doubt, that defendant knowingly restrained N.D. under circumstances which exposed her to the risk of serious bodily injury.

C.     The Sentence.

As already noted, defendant was sentenced to a discretionary extended term of imprisonment as a persistent offender. See N.J.S.A. 2C:44-3(a). That sentence was imposed after the court found that the State established the elements of the extended-term statute.

A-0161-23

In 2024, while this appeal was pending, the United States Supreme Court held that "the Fifth and Sixth Amendments generally guarantee a defendant the right to have a unanimous jury find beyond a reasonable doubt any fact that increases his exposure to punishment." Erlinger v. United States, 602 U.S. 821, 828 (2024). In Erlinger, the Supreme Court also held that "[v]irtually 'any fact' that '"increase[s] the prescribed range of penalties to which a criminal defendant is exposed"' must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)." Id. at 834 (second alteration in original) (quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)).

We have recently applied the holding in Erlinger to N.J.S.A. 2C:44-3(a). State v. Carlton, 480 N.J. Super. 311, 317 (App. Div. 2024). Specifically, we held that "a unanimous jury must find beyond a reasonable doubt that all . . . of the [N.J.S.A. 2C:44-3(a)] factual predicates are present, or the defendant must admit these predicates as part of a knowing and voluntary waiver of the right to a jury trial with respect to extended-term eligibility." Id. at 328-29. We also held that our ruling applied retroactively to pipeline cases, which were pending on appeal. Id. at 337-38. See also Griffin v. Kentucky, 479 U.S. 314, 328 (1987) (explaining that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or

not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past").

In Carlton, we also rejected the State's argument that the harmless constitutional error doctrine applies to pipeline cases to which Erlinger is retroactively applied. Carlton, 480 N.J. Super. at 339. We based that holding on "the Erlinger majority's unambiguous rejection of the notion that overwhelming evidence obviates the need to have a jury make the decision " that the elements of an extended-term statute have been met. Id. at 336.

We therefore apply the holding in Erlinger to defendant's direct appeal of his sentence. We vacate defendant's extended-term sentence and remand for further proceedings. If the State seeks to impose an extended-term sentence on remand, the court shall, in the absence of a knowing waiver of defendant's right to a jury trial, hold a jury trial limited to the question of whether defendant is a persistent offender. See N.J.S.A. 2C:44-3(a). The State shall have the burden of proving, beyond a reasonable doubt, the required elements of the persistent offender statute.

No matter how the State and defendant elect to proceed on remand, defendant will have to be resentenced. We, therefore, need not address all of

A-0161-23

defendant's other arguments concerning his sentence, but we do provide guidance on two issues.

First, the sentencing court correctly merged defendant's conviction for criminal sexual contact into his conviction for sexual assault. See N.J.S.A. 2C:1-8(a). The sentencing court, however, then erred by separately sentencing defendant to eighteen months in prison and imposing a series of penalties related to the conviction for criminal sexual contact. The State concedes that that part of the sentence was improper. Accordingly, at resentencing the conviction for criminal sexual contact should again be merged into the sexual assault conviction, but no separate sentence or penalties should be imposed for the criminal sexual contact conviction. See State v. Tate, 216 N.J. 300, 302 (2013) (explaining that the "doctrine of merger is based on the concept that 'an accused [who] committed only one offense . . . cannot be punished as if for two'" (quoting State v. Davis, 68 N.J. 69, 77 (1975))).

Second, at defendant's resentencing, the sentencing court must re-evaluate and make express findings of fact concerning the aggravating and mitigating factors. See State v. Comer, 249 N.J. 359, 404 (2022). The court must also address the overall fairness of the sentence. See State v. Torres, 246 N.J. 246, 272 (2021).

## III.

In summary, we affirm defendant's convictions.  We vacate his sentence and remand for further proceedings, including a new sentencing.

Affirmed in part, reversed in part, and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0161-23