**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3139-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ELMAN MARROQUIN,

     Defendant-Appellant.

_____

Submitted October 6, 2020 – Decided December 28, 2020

Before Judges Mawla and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 16-05-0284.

Joseph E. Krakora, Public Defender, attorney for appellant (John J. Bannon, Designated Counsel, on the brief).

Michael H. Robertson, Somerset County Prosecutor, attorney for respondent (Amanda Frankel, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Elman Marroquin appeals from an October 5, 2018 order denying his petition for post-conviction relief (PCR) following an evidentiary hearing and his motion to withdraw his guilty plea. He also appeals from a December 20, 2018 order denying his motion for reconsideration.

Defendant claims his trial counsel was constitutionally ineffective because he failed to: 1) discuss with him all available defenses; 2) review the State's discovery with him; 3) warn about his maximum sentencing exposure, including the immigration consequence of any plea; and 4) advise that he could accept pretrial intervention (PTI), or proceed to trial in lieu of his plea deal. Defendant also moved to vacate his plea primarily contending that it was neither voluntary nor knowing as he failed to provide a sufficient factual basis to support the charges. We disagree with all of these arguments and affirm.

I.

Defendant was arrested after he got into a drunken altercation with his brother and pulled out a box cutter. After the fight was interrupted by a bystander, responding officers arrived and asked defendant to drop the box cutter but he did not immediately comply. Defendant was arrested and charged with: 1) third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2); 2) third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d);

and 3) fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d). He was also issued a summons for resisting arrest, N.J.S.A. 2C:29-2(a)(1), a disorderly persons offense.

Defendant applied for admission into the PTI program, a request that was initially recommended and not opposed by the State. As a condition of his admission to PTI, however, defendant was required to plead guilty to the charges. Although defendant completed the necessary plea forms, he did not plead guilty at the scheduled plea hearing. Instead, he maintained his innocence and requested the opportunity to consult with an immigration attorney.

After defendant spoke with an immigration attorney, he resubmitted his plea forms and pled guilty to amended charges of: 1) simple assault, N.J.S.A. 2C:12-1(a)(3); 2) disorderly conduct, N.J.S.A. 2C:33-2(a)(1); 3) fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); and 4) resisting arrest, N.J.S.A. 2C:29-2(a).

At the plea hearing, defendant admitted his guilt and no longer claimed he was innocent of the charges. He also stated that he was entering the plea voluntarily and that nobody "pressure[d him], coerce[d him], or place[d him] under duress, or und[ue] influence."

In addition, the following colloquy occurred regarding the immigration consequences of defendant's plea:

> COURT: Do you understand that as a result of your guilty plea that you are substantially likely to be deported?
>
> DEFENDANT: Yes.
>
> COURT: This court, as a state court, has no[] authority over immigration matters.
>
> DEFENDANT: I understand that.
>
> COURT: It will be up to [f]ederal immigration authorities to decide whether or not you should be deported, after you have a hearing.
>
> DEFENDANT: I understand that.
>
> COURT: Have you had an opportunity to speak with an immigration attorney, or do you wish to do so, prior to completing your guilty plea here today?
>
> DEFENDANT: I've spoken to one already.
>
> COURT: Therefore, you're ready to proceed at this time with your guilty plea, after you had the opportunity to already speak with an immigration lawyer, is that correct?
>
> DEFENDANT: Yes.
>
> COURT: While I do not know what, if any, action will be taken by the immigration authorities, any defendant who pleads in front of this court is always told that you

4

should assume that you will be deported as a result of your plea. Do you understand that warning, sir?

DEFENDANT: Yes.

With regard to the factual basis for defendant's plea, defendant's counsel and the court elicited the following facts:

> [TRIAL COUNSEL]: . . . [O]n April 7th, 2016[,] at approximately 11 p.m. were you in possession of an item that's depicted in the photograph marked as Exhibit D-1, that's here before you?
>
> DEFENDANT: Yes.
>
> [TRIAL COUNSEL]: And this photograph D-1 depicts a utility knife that you normally carried with you for work purposes?
>
> DEFENDANT: Yes.
>
> [TRIAL COUNSEL]: And at approximately 11 p.m. on April 7, 2016[,] you were in possession of that utility knife not for work purposes, is that correct?
>
> DEFENDANT: Yes.
>
> [TRIAL COUNSEL]: On the evening that we just mentioned did you have an argument with the victim at 16 Clairmont Road in Bernardsville at the time we just described?
>
> DEFENDANT: Yes.
>
> [TRIAL COUNSEL]: At that time did you intend to frighten or scare the victim in this case?

DEFENDANT: I was trying to frighten him, yes.

[TRIAL COUNSEL]: At that time, and at that place, did you cause a disturbance by having an argument with the victim?

DEFENDANT: Yes.

[TRIAL COUNSEL]: And at some point the police came, is that correct?

DEFENDANT: Correct.

[TRIAL COUNSEL]: And after the police came they requested that you approach them and you did not immediately comply, is that correct?

DEFENDANT: Correct.

. . . .

COURT: . . . Mr. Marroquin, did you in the course of an argument with the victim on April 7th, 2016, in Bernardsville, . . . hold up a box cutter in a manner that you put the victim in fear of imminent serious bodily injury?

. . . .

DEFENDANT: Yes.[1]

---

[1] We note that the transcript reveals that the interpreter initially incorrectly translated the court's question as to whether defendant put his brother in fear of imminent serious bodily injury by using the Spanish word for death. We are satisfied that the interpreter, upon immediate request from the court and trial counsel, rectified this mistake and posed the appropriate question to defendant. In this regard, the interpreter's statement, "I will rectify for the record," was followed by defendant's affirmative response.

A-3139-18T4

Defendant was sentenced to two years of probation, community service, and ordered to participate in substance abuse, anger management and psychological evaluations, and complete any recommended treatment. He was credited with 204 days of jail credit and immediately released from custody. Upon his release, defendant was detained by United States Immigration and Customs Enforcement (ICE) representatives and eventually deported to Guatemala.

Defendant never filed a direct appeal of his convictions or sentence. While in ICE's custody, defendant filed an initial and amended PCR petition which was supplemented by a supporting brief by appointed PCR counsel. Defendant alleged his counsel was constitutionally ineffective under Strickland v. Washington, 466 U.S. 668, 686 (1984), and State v. Fritz, 105 N.J. 42, 58 (1987), based on the four separate bases previously noted. Defendant also filed a motion to vacate his plea.

In a June 5, 2018 order, the PCR court granted defendant's request for an evidentiary hearing. The PCR court found that a limited hearing was necessary to further assess whether the advice counsel gave defendant regarding the immigration consequences of his plea "was negated by conversations that

occurred off the record" and whether trial counsel "pressured" defendant to take the plea agreement.

On October 5, 2018, the PCR court denied defendant's PCR petition and his motion to withdraw his guilty plea. In a corresponding written opinion, the PCR court specifically rejected defendant's ineffective assistance of counsel claim based on counsel's alleged failure to warn about the immigration consequences of his plea. It "critically" found that defendant testified that he "was informed by immigration counsel that he would be deported if he accepted the plea deal, that he was fully aware of the immigration consequences of the plea, he understood that he would be deported if he accepted the plea, and that he decided to accept the plea nonetheless." As a result, the court found "[defendant] was not given misleading advice about . . . deportation."

The PCR court also found the factual basis for defendant's plea was sufficient and noted that the plea colloquy established defendant "was in possession of a utility knife and used it in a manner to cause the victim to fear imminent bodily injury." Further, the PCR court found "[t]he circumstances . . . make it apparent that [d]efendant knew he was being arrested" and thus satisfied the elements of the resisting arrest charge.

The court also concluded at the time of defendant's plea he "ha[d] not made a colorable claim of innocence." Finally, the PCR court noted that defendant "gave sworn testimony that he was entering a free and voluntary plea" and concluded defendant did not establish that he was "misled or coerced into taking the plea deal."

Defendant filed a motion for reconsideration relying on State v. Vasco, 456 N.J. Super. 382 (2017), rev'd on dissent, 235 N.J. 365 (2018), which the Supreme Court decided shortly after the PCR court's October 5, 2018 decision. The court denied the motion after hearing oral arguments in a December 20, 2018 order and corresponding opinion. The PCR court found defendant's "reliance on [Vasco] misplaced as [defendant] did admit to the circumstances necessary to establish his guilt," which went "far beyond the defendant in Vasco."

On appeal, defendant argues:

POINT I

BECAUSE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR PCR.

A. [LEGAL STANDARDS GOVERNING APPLICATIONS FOR POST-CONVICTION RELIEF.

B.    TRIAL COUNSEL FAILED TO ADVISE MR. MARROQUIN OF HIS DEFENSES, FAILED TO REVIEW DISCOVERY WITH MR. MARROQUIN, MISINFORMED MR. MARROQUIN OF HIS MAXIMUM EXPOSURE IF CONVICTED, AND INAPPROPRIATELY ADVISED MR. MARROQUIN TO PLEAD GUILTY RATHER THAN ACCEPTING PTI OR PROCEEDING TO TRIAL].

POINT II

BECAUSE DEFENDANT DID NOT MAKE A KNOWING, INTELLIGENT, AND VOLUNTARY PLEA, THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR PCR.

A.    [LEGAL STANDARDS GOVERNING APPLICATIONS FOR POST-CONVICTION RELIEF.

B.    DEFENDANT DID NOT MAKE A KNOWING, INTELLIGENT, AND VOLUNTARY GUILTY PLEA WITH A SUFFICIENT FACTUAL BASIS].

II.

"Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). It serves as a safeguard to ensure that a

criminal defendant was not unfairly convicted and is the "last line of defense against a miscarriage of justice." State v. Nash, 212 N.J. 518, 526 (2013).

Our review of a PCR claim after a court has held an evidentiary hearing "is necessarily deferential to [the] PCR court's factual findings based on its review of live witness testimony." Nash, 212 N.J. at 540. Where an evidentiary hearing has been held, we should not disturb "the PCR court's findings that are supported by sufficient credible evidence in the record." Pierre, 223 N.J. at 576 (citations omitted). We review any legal conclusions of the trial court de novo. Nash, 212 N.J. at 540-41; State v. Harris, 181 N.J. 391, 419 (2004).

As relevant here, one ground for post-conviction relief asks whether there has been a "[s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the [c]onstitution or laws of the State of New Jersey." R. 3:22-2(a). A criminal defendant's right to counsel, under the Sixth Amendment of the United States Constitution and article I, paragraph 10 of the New Jersey Constitution, includes the right to adequate legal advice. Strickland, 466 U.S. at 686; Fritz, 105 N.J. at 58.

To establish a prima facie claim of ineffective assistance of counsel, the defendant is obliged to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced his right to a

fair trial. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58. The United States Supreme Court has extended these principles to a criminal defense attorney's representation of an accused in connection with a plea negotiation. Lafler v. Cooper, 566 U.S. 156, 162-63 (2012); Missouri v. Frye, 566 U.S. 134, 143-44 (2012).

There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. Further, because prejudice is not presumed, Fritz, 105 N.J. at 52, the defendant must demonstrate "how specific errors of counsel undermined the reliability" of the proceeding. United States v. Cronic, 466 U.S. 648, 659 n.26 (1984).

In order to establish the Strickland prejudice prong to set aside a guilty plea based on ineffective assistance of counsel, a defendant must also show "there is a reasonable probability that, but for counsel's errors, [defendant] would not have pled guilty and would have insisted on going to trial." State v. DiFrisco, 137 N.J. 434, 457 (1994) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Moreover, "a [defendant] must convince the court that a decision to reject the plea bargain" and "insist on going to trial" would have been "rational under the circumstances." State v. Maldon, 422 N.J. Super. 475, 486 (App. Div.

A-3139-18T4

2011) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). That determination should be "based on evidence, not speculation." Ibid.

As noted, defendant points to four separate errors committed by his trial counsel that deprived him of his Sixth Amendment rights, "if not individually, then cumulatively." We discuss each claim separately and conclude defendant failed to satisfy either the performance or prejudice prong of the Strickland test.

A. Failure to discuss defenses.

Defendant argues that his trial counsel was constitutionally deficient because he never discussed all available defenses with him. Specifically, defendant contends discovery supported viable claims that he: 1) acted in self-defense; 2) did not possess the requisite criminal intent based on his intoxication; and 3) was in lawful possession of the boxcutter. In support, defendant points to his testimony before the PCR court and his statements to the police that his brother "broke [some beer] bottles and then . . . pushed [defendant a] couple times." Defendant also claims a bystander "came from nowhere" and threw him against a dumpster. Defendant argues these facts created a cognizable claim of self-defense because he pulled out the box cutter to defend against his drunken brother's actions and from an unknown assailant. We reject defendant's arguments for two reasons.

A-3139-18T4

First, at the evidentiary hearing, defendant's trial counsel testified that he discussed with defendant his alleged "innocen[ce]" and "possible defenses" and decided to assert a "factual defense." Counsel further explained that he intended to focus on the fact that the box cutter "was not a deadly weapon that [defendant] was holding. That he had no intent. That it wasn't used in any of the incidents as alleged." We glean from the court's denial of defendant's petition that it rejected defendant's testimony and credited that of his trial counsel.

Second, we conclude trial counsel's strategic decision to ultimately plead guilty exhibited "reasonable professional judgement." Strickland, 466 U.S. at 690. As the PCR court noted, defendant "fail[ed] to establish a colorable claim of self-defense." Indeed, use of the box cutter to put defendant's brother in fear of serious bodily injury was a disproportionate response to the altercation. See N.J.S.A. 2C:3-4.

B.    Failure to review discovery.

With respect to counsel's alleged failure to review discovery with him, defendant specifically claims that his trial counsel "never reviewed [the audio of his brother]'s statement to the police with him."[2] Defendant asserts that the

_____

[2] Several weeks after defendant was arrested, the police conducted an interview of his brother in Spanish. This interview was summarized in English in the

paper discovery was not an "honest narrative of the statement of [his brother]" because it was "inaccurate, misleading, and self-serving."

During the evidentiary hearing, however, trial counsel stated he did review all necessary discovery materials with defendant but that he was unable to play any audio recording for defendant because he was not permitted to bring his laptop to the jail where defendant was incarcerated. While trial counsel admitted to not translating the brother's statement to the police from Spanish to English, he did review with defendant the prosecutor's "paper discovery," which would have included the report from the State summarizing his brother's statement.

Moreover, we note there is no material conflict between the summary in the investigation report and the translation of the brother's statement to the police in the record. While defendant's brother started the interview by denying the presence of a box cutter, he then recanted that statement at the end of the interview and stated defendant did possess the box cutter and that it was pointed at his throat.

C.    Failure to advise about sentencing exposure.

_____

prosecutor's investigation report. The audio recording was eventually transcribed into English for purposes of defendant's PCR petition and was available in the record for our review.

15

Defendant also asserts his trial counsel failed to inform him of his maximum sentencing exposure if convicted, including "the collateral immigration consequences." Defendant specifically argues that trial counsel "failed in his obligation to explain the matter [of deportation] to [defendant] to the extent reasonably necessary to permit him to make informed decisions." See State v. Nuñez-Valdéz, 200 N.J. 129, 140-43 (2009) (holding counsel is ineffective where advice given to a defendant regarding the removal consequences of a guilty plea is "false," or "inaccurate" and affirmatively "misleading").

As noted, the PCR court concluded "[defendant] was not given misleading advice about . . . deportation." This finding was fully supported by sufficient credible evidence in the record, particularly the colloquy from the plea hearing. See Pierre, 223 N.J. at 576. Indeed, defendant admitted to speaking with an immigration attorney and that she answered all his questions. The record establishes that defendant was warned multiple times that deportation was substantially likely to occur based on his plea.

D.    Failure to advise regarding PTI and ability to proceed to trial.

Defendant's claim that his trial counsel failed to advise him regarding the availability of the PTI program or his ability to proceed to trial is also belied by

16

the record.  Indeed, defendant was fully aware of the option of entering the PTI program as it was discussed at the first plea hearing, which did not conclude as defendant initially proclaimed his innocence and requested to speak with immigration counsel.

In sum, we conclude defendant has failed to satisfy either the performance or prejudice prong under Strickland for all four of his ineffective assistance of counsel claims.  Further, defendant has failed to show it would have been rational to forego his guilty plea and proceed to trial under the circumstances. Maldon, 422 N.J. Super. at 486.

III.

In his second argument, defendant claims that the court should have granted his petition and vacated his entire plea due to his failure to provide an adequate factual basis for the unlawful possession of a weapon and resisting arrest charges.  Defendant also claims the court committed error when it denied his request to vacate his plea under State v. Slater, 198 N.J. 145, 150 (2009). We disagree with these arguments.

Where, as here, the application to withdraw a guilty plea is made after sentencing, a defendant must demonstrate that a "manifest injustice" occurred. Slater, 198 N.J. at 158 (citing R. 3:21-1).  "[E]fforts to withdraw a plea after

17

sentencing must be substantiated by strong, compelling reasons." Id. at 160. Courts considering post-sentencing motions apply "a more stringent standard" and "weigh[] more heavily the State's interest in finality." State v. McQuaid, 147 N.J. 464, 487 (1997). Moreover, "[i]n the PCR context, to obtain relief from a conviction following a plea, 'a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" State v. O'Donnell, 435 N.J. Super. 351, 371 (App. Div. 2014) (quoting Padilla, 559 U.S. at 372).

In Slater, the Supreme Court delineated a four-factor balancing test to guide courts in exercising their discretion to set aside guilty pleas.[3] Id. at 157-58. The Court in State v. Tate, however, instructed "when the issue is solely whether an adequate factual basis supports a guilty plea, a Slater analysis is unnecessary." 220 N.J. 393, 404 (2015) (citations omitted). Such an issue is

_____

[3] These factors are:

> (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused.
>
> [Slater, 198 N.J. at 150.]

reviewed de novo, because "[a]n appellate court is in the same position as the trial court in assessing whether the factual admissions during a plea colloquy satisfy the essential elements of an offense." Ibid.

> In recognition of a defendant's constitutional protections, when he or she decides to plead guilty and waive the right to a trial, the court "must be convinced that (1) the defendant has provided an adequate factual basis for the plea; (2) the plea is made voluntarily; and (3) the plea is made knowingly."
>
> [State v. Gregory, 220 N.J. 413, 418 (2015) (quoting State v. Lipa, 219 N.J. 323, 331 (2014)); see also R. 3:9-2.]

The factual basis for the plea can be established in either of two ways: "defendant may either explicitly admit guilt with respect to the elements or may 'acknowledge[] . . . [underlying] facts constituting the essential elements of the crime.'" State v. Campfield, 213 N.J. 218, 231 (2013) (citation omitted); see also Gregory, 220 N.J. at 419-20. As the Supreme Court stated in State v. Sainz, 107 N.J. 283, 292 (1987), "[t]he essential thing is that the defendant is in fact guilty of the crime for which he is being sentenced."

A factual basis for unlawful possession of a weapon exists when: 1) there is a weapon; 2) that defendant possessed knowingly; and 3) "under circumstances not manifestly appropriate for such lawful uses." N.J.S.A. 2C:39-5(d). Circumstances that are not manifestly appropriate include a threat of harm

to persons. State ex rel. G.C., 179 N.J. 475, 480-81 (2004). Additionally, a factual basis for resisting arrest exists when: 1) there was a law enforcement officer; 2) effecting an arrest; 3) that defendant knew or had reason to know that the officer was effecting an arrest; and 4) defendant "purposely prevent[ed]" the officer from effecting the arrest. N.J.S.A. 2C:29-2(a); see also State v. Simms, 369 N.J. Super. 466, 470 (App. Div. 2004).

Here, defendant stated in his plea colloquy that it was his voluntary decision to enter the plea agreement, he was guilty of the charges, and nobody pressured, coerced, or placed him under duress or undue influence. Further, defendant admitted to facts that established a factual basis for a conviction of unlawful possession of a weapon. In the plea colloquy, defendant stated he was carrying a box cutter and that he was "in [its] possession . . . not for work purposes." Defendant also admitted he used the box cutter to "put [his brother] in fear of imminent serious bodily injury." These are circumstances that are not "manifestly appropriate for such lawful uses." See N.J.S.A. 2C:39-5(d).

Defendant relies on State v. Blain, 221 N.J. Super. 66, 70 (App. Div. 1987), State v. Riley, 306 N.J. Super. 141, 143-45 (App. Div. 1997), and Vasco, 456 N.J. Super. at 395 (Espinosa, J., dissenting), for the proposition that mere possession of a weapon is not sufficient to support a factual basis for unlawful

possession. Unlike these cases, and as noted, defendant admitted to facts that show circumstances "not manifestly appropriate for such lawful uses" by using the box cutter to threaten his brother.

We also conclude defendant provided a sufficient factual basis for the resisting arrest charges. Defendant admitted during his plea colloquy that the police arrived because of a fight with his brother and that "[the police] requested that [he] approach them and [that he] did not immediately comply."

Further, we consider the plea colloquy as a whole. See Gregory, 220 N.J. at 420 (holding courts may look at "surrounding circumstances" from "stipulations and facts admitted or adopted by the defendant" (citations omitted)). In this regard, defendant possessed the box cutter when the officers arrived and admitted he failed to comply with their ensuing instructions after intentionally using the box cutter to threaten his brother. We can infer from these facts that defendant had reason to know the officers arrived to effectuate an arrest. See, e.g., State v. Branch, 301 N.J. Super. 307, 321 (App. Div. 1997) (noting "[t]he failure to announce that defendant was under arrest would only be

one factor to be considered in the overall sequence of events leading to" a resisting arrest charge), rev'd on other grounds, 155 N.J. 317, 319 (1998).[4]

Defendant's reliance on State v. Ashley, 443 N.J. Super. 10, 22-23 (App. Div. 2015), is misplaced. Unlike the defendant in Ashley who sought to withdraw his plea on direct appeal, defendant seeks relief by way of a PCR petition, which requires defendant to show a substantial denial of his constitutional or legal rights. R. 3:22-2(a); see also O'Donnell, 435 N.J. Super. at 368-73 (reviewing distinctions between motion to withdraw plea and petition for PCR). Here, defendant did not assert a claim of innocence contemporaneous to his plea, and we conclude his conviction does not constitute a deprivation of his constitutional rights under the circumstances presented.

Finally, defendant argues even if we find he provided a sufficient factual basis, the PCR court erred in refusing to vacate his plea under the Slater factors.

---

[4] We observe that defendant relies on Vasco, 456 N.J. Super. at 395 (Espinosa, J., dissenting), for the proposition that a court reviewing a plea colloquy may not rely on information outside of the facts elicited at the plea hearing. In his merits brief, however, defendant inconsistently relies on the responding officers' investigation reports. These reports indicate defendant refused to put down the box cutter after a responding officer pointed a gun at him and defendant started to approach the officer. The reports also indicate defendant pulled away from officers when they attempted to handcuff him. As we have concluded that the plea colloquy provided a sufficient factual basis, we have not considered these reports in our analysis.

After balancing all four of the <u>Slater</u> factors, we determine under this record that defendant has not met his burden of substantiating his request with "strong, compelling reasons." <u>Slater</u>, 198 N.J. at 160.  Defendant has not shown that the denial of his motion was manifestly unjust, overcoming the "formidable barrier" created by the acceptance of his guilty plea.  <u>Id.</u> at 156 (quoting <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)).

To the extent we have not addressed any of defendant's remaining arguments, it is because we have determined they are without sufficient merit to warrant discussion in a written decision.  <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23

A-3139-18T4